[No. 55981–3.   En Banc.   August 2, 1990.]

DONALD MYERS, *as Personal Representative and Administrator, Petitioner,* v. THE BOEING COMPANY, *Respondent.*

VERNON T. JUDKINS, *as Personal Representative and Administrator, Petitioner,* v. THE BOEING COMPANY, *Respondent.*

*Stoel Rives Boley Jones & Grey,* by *Deborah A. Elvins* and *Margaret A. Pageler; Krutch, Lindell, Judkins & Keller, P.S.,* by *Richard F. Krutch; Speiser, Krause & Madole,* by *Donald W. Madole,* for petitioners.

*Perkins Coie, Keith Gerrard, Thomas J. McLaughlin,* and *Scott F. Seablom,* for respondent.

DURHAM, J.—After the trial court bifurcated plaintiffs' cause of action, defendant admitted liability and moved for a dismissal of the damages claims on forum non conveniens grounds. The trial court found that, as to damages, Japan was the more convenient forum and granted the motion. The Court of Appeals affirmed the trial court in an unpublished opinion. Plaintiffs appeal, contending that the trial court abused its discretion in bifurcating the action and in dismissing the damages claims. Plaintiffs also argue that the dismissal violated their treaty rights. Finding no error, we affirm.

On August 12, 1985, a Boeing 747 aircraft owned by Japan Air Lines (JAL) crashed while en route from Tokyo to Osaka, Japan. Five hundred twenty people died in the crash, most of them Japanese nationals. Myers and Judkins, personal representatives, brought eight actions against Boeing and JAL on behalf of the estates of 71 Japanese nationals and 8 non–Japanese nationals.[1] Upon motion by Boeing, to which plaintiffs did not object, the trial court consolidated the eight actions for "pretrial purposes". The consolidated actions were preassigned to the King County Track One system, Judge Gary M. Little presiding. Boeing then moved to dismiss all eight complaints on forum non conveniens grounds. In its motion papers, Boeing stated that if the cases were dismissed and refiled in the decedents' countries, Boeing would agree not to contest liability.

In response to that motion, the trial court entered an order dated May 7, 1987, ruling as follows:

1. The liability issue and the damage issue in these actions should be, and hereby are, bifurcated;

2. The issue of liability in these actions will be resolved in this jurisdiction;

3. Resolution of the question of what forum in which to determine damages is hereby reserved pending resolution of the liability question[.][2]

Based on admissions made by Boeing in a pretrial conference, the trial court entered a judgment dated July 24, 1987. The court found that Boeing admitted the following:

a. In 1978 Boeing repaired the aft pressure bulkhead of the accident airplane in Japan;

b. Boeing performed a portion of the bulkhead repair incorrectly;

c. The incorrect repair performed by Boeing was a proximate cause of the crash of the accident airplane on August 12, 1985; and

d. Boeing is liable to plaintiffs for compensatory damages resulting from the crash.

---

[1]These eight are citizens of Hong Kong, West Germany, Italy, Australia, and England.

[2]There is no indication that either party requested the bifurcation of issues. The court appears to have acted on its own.

The trial court also found that Boeing admitted that a section of the final report of the Japanese Aircraft Accident Investigation Committee, which attributed the crash to fatigue cracks resulting from improper repairs made in 1978, accurately described the cause of the crash. Based on those findings, the court entered judgment that "Boeing [was] liable to plaintiffs for compensatory damages caused by the crash" and that "[the judgment was] a conclusive determination of Boeing's liability."

After the judgment was entered, JAL was dismissed from the suit on plaintiffs' motion. Boeing then renewed its motion to dismiss on forum non conveniens grounds as to the issue of damages, limited to the Japanese nationals.

On September 10, 1987, the trial court granted Boeing's motion to dismiss. Conditions of the dismissal were that Boeing submit to jurisdiction in Japan, waive any statute of limitation defenses, admit liability for compensatory damages, and not oppose recognition in Japan of the judgment on liability entered on July 24, 1987. The trial court expressly granted plaintiffs the right to return to King County Superior Court for trial on damages if "the actions cannot be handled expeditiously in Japan." The court retained jurisdiction over the non–Japanese nationals "which were not the subject of Boeing's present forum non conveniens motion".

The Court of Appeals affirmed the trial court in an unpublished opinion.[3] *Myers v. Boeing Co.,* noted at 53 Wn. App. 1043 (1989). This court granted plaintiffs' petition for review.

## I
### FORUM NON CONVENIENS

This court first recognized the doctrine of forum non conveniens in *Werner v. Werner,* 84 Wn.2d 360, 371,

---

[3]At the appellate level, Boeing raised the issue of appealability of a dismissal of fewer than all of the consolidated claims. The Court of Appeals found that the actions were consolidated solely for "pretrial purposes" and appellate review was proper. That issue is not before this court.

526 P.2d 370 (1974). Under the doctrine, courts have discretionary power to "[decline] jurisdiction where, in the court's view, the difficulties of litigation militate for the dismissal of the action subject to a stipulation that the defendant submit to jurisdiction in a more convenient forum." *Werner,* at 370. The standard of review applicable to a decision to dismiss on forum non conveniens grounds is abuse of discretion. Such a dismissal may only be reversed if it is "manifestly unfair, unreasonable or untenable." *General Tel. Co. v. Utilities & Transp. Comm'n,* 104 Wn.2d 460, 474, 706 P.2d 625 (1985).

The doctrine presupposes that there are at least two forums in which the defendant is amenable to process. *Werner,* at 370. In *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947), the United States Supreme Court set out the criteria for choosing the appropriate forum. This court adopted the *Gulf Oil* factors in *Johnson v. Spider Staging Corp.,* 87 Wn.2d 577, 555 P.2d 997 (1976).

■ Recognizing that application of the doctrine is within the discretion of the trial court, the Supreme Court expressly declined to set up bright line rules. Instead, the Court set out a list of private and public interest factors to be considered and balanced.

The private interests to be considered are as follows:

the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil,* at 508.

The Court went on to say the following:

There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the

defendant, the plaintiff's choice of forum should rarely be disturbed.

(Footnote omitted.) *Gulf Oil,* at 508.

The Court also set out public interest factors to be considered:

Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Gulf Oil,* at 508–09.

In granting Boeing's motion, the trial court first found that an adequate alternative forum was available in Japan. Plaintiffs have not challenged this finding and, indeed, concede that Japanese law provides full compensation. The court then balanced the *Gulf Oil* factors. The court found that the balance weighed heavily in favor of Japan as the proper forum in which to determine damages.

As to the private interest factors, the trial court made the following finding:

[V]irtually all of the witnesses, documents and other evidence pertaining to the issue of damages are located in Japan. Ease of access to those sources of proof favors trial in Japan. This court could not compel the attendance at trial in Washington of witnesses located in Japan. The cost of obtaining the attendance of Japanese witnesses in Washington would be substantial. Real practical problems exist in trying these actions in Washington [because the relevant documents] are in Japanese and most of the witnesses would testify in Japanese.

Finding of fact 12.

As to the public interest factors, the trial court found as follows:

The JAL accident took the lives of over 500 Japanese nationals. Japan has a strong interest in having claims arising from the

deaths of its residents heard in Japan. Moreover, were these actions to be tried in Washington, it is likely that at least some of the damages issues would be governed by Japanese law. The Japanese courts' expertise in applying their own law, while not a factor of paramount importance, favors dismissal.

Finding of fact 13.

The trial court was "guided by" *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981), *reh'g denied,* 455 U.S. 928 (1982). In that case, the United States Supreme Court, applying the *Gulf Oil* factors, affirmed the dismissal of a wrongful death action brought in Pennsylvania on behalf of the estates of six Scottish nationals killed in an airplane crash in Scotland. The airplane was manufactured in Pennsylvania. The trial court found, and the Supreme Court agreed, that Scotland was the more convenient forum. In upholding the forum decision, the Court held that under the *Gulf Oil* balancing test, "a foreign plaintiff's choice [of forum] deserves less deference" than that of a United States resident or citizen. *Reyno,* at 256.[4]

On appeal, plaintiffs make a number of arguments. These arguments can be grouped around three main issues. First, plaintiffs argue that the trial court erred in its balancing of the *Gulf Oil/Spider Staging* factors. Second, plaintiffs argue that the trial court erroneously relied on the "lesser deference" standard of *Reyno,* thus adopting a standard that directly conflicts with *Spider Staging.* Third, plaintiffs argue that dismissal in this case is fundamentally unfair.

## Gulf Oil Factors

We first consider plaintiffs' argument that the trial court erred in its balancing of the *Gulf Oil/Spider Staging* factors.

---

[4]While the word "foreign" most often refers to nonresident, as opposed to domestic, plaintiffs, the lesser deference standard of *Reyno* applies to foreign *nationals,* as opposed to United States citizens. The Court stated that "[t]he District Court's distinction between resident or citizen plaintiffs and foreign plaintiff's is fully justified", *Reyno,* at 256, and "[c]itizens or residents deserve somewhat more deference than foreign plaintiffs . . .". *Reyno,* at 255 n.23.

On appeal, plaintiffs do not assign error to any of the above findings of fact.[5] Rather, plaintiffs contend that while the findings are "factually correct", the trial court erred when it balanced those findings using the *Gulf Oil/ Spider Staging* factors.

Plaintiffs assert that the present case is "identical" to *Spider Staging,* mandating the same result. Plaintiffs argue that the fact that dismissal was reversed in *Spider Staging* and upheld in the present case necessarily leads to the conclusion that, in the present case, the trial court did not apply the *Spider Staging* standard properly. This argument is without merit.

Relying on the result to prove the conclusion ignores the nature of the test applied. In *Gulf Oil,* the Supreme Court expressly declined to set out categories of fact patterns mandating a specific result. Instead, the Court listed a number of factors to be considered, leaving the ultimate decision to the discretion of the trial court. *Gulf Oil,* at 508–09. While the factors to be considered remain constant, the balance and result are fact specific.

More importantly, there are a number of important differences between the facts of the present case and the facts of *Johnson v. Spider Staging Corp.,* 87 Wn.2d 577, 555 P.2d 997 (1976). In *Spider Staging,* a wrongful death action was brought in Washington by a Kansas resident who, while working in Kansas, fell to his death from a scaffold built in Washington. The trial court granted defendant Spider Staging's motion to dismiss on the grounds of forum non conveniens. This court reversed the trial court, finding that the balance of factors did not "strongly favor the [defendants]." *Spider Staging,* at 580. Reviewing the factors, this court found the following:

---

[5]Under RAP 10.3(g), "[a] separate assignment of error for each finding of fact a party contends was improperly made . . . must be included with reference to the finding . . . by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto."

[A]ll of the evidence which pertains to the manufacturing and marketing of the scaffold is in Washington State. [Defendants] are Washington corporations, and all of their principal officers reside in King County. Both of the engineers who designed the scaffold live in King County. The two principal witnesses from Kansas [are willing to] appear in Washington. Also, [plaintiff] will bring the scaffold to Washington and give [defendants] an opportunity to examine it.

*Spider Staging,* at 580.

Plaintiffs would have this court equate the practical problems in trying the case brought by the estate of one decedent from Kansas against a Washington manufacturer where liability is still at issue, with trying a case brought by the estates of 71 Japanese nationals where the only remaining issue is damages. Plaintiffs assert that the cases are "identical" despite the number of significant differences: the nature of issues to be resolved, the number of plaintiffs, the foreign citizenship of plaintiffs, the distances involved, and a language barrier.

Relying heavily on the finding in *Spider Staging* that the two principal witnesses were willing to come to Washington, plaintiffs argue that their willingness to bring Japanese witnesses to Washington takes the burden off defendant, thereby tipping the balance under the test. Again, plaintiffs disregard the difference in numbers. More importantly, the weight to be given to a plaintiff's willingness to bring witnesses to the chosen forum was directly addressed in *Gulf Oil*. When faced with a plaintiff from Virginia who offered to bring all necessary witnesses to New York, plaintiff's chosen forum, the Supreme Court stated that "[t]here may be circumstances where such a proposal should be given weight. In others, the offer may not turn out to be as generous as defendant or court might suppose it to be. Such matters are for the [trial court] to decide in exercise of a sound discretion." *Gulf Oil,* at 511.

The facts in *Spider Staging* are not so similar to the present case that dismissal in the present case amounts to a "conflict" with the "strongly in favor of defendant" standard of deference set forth in *Spider Staging*.

Plaintiffs also argue that the trial court balancing of factors was flawed because the court erroneously assumed Japanese law would be applied to the damages issue. While the trial court formally declined to make a ruling on choice of law as to damages, the court found:

> [I]t is likely that at least some of the damages issues would be governed by Japanese law. The Japanese courts' expertise in applying their own law, while not a factor of paramount importance, favors dismissal.

Finding of fact 13.

Again plaintiffs contend that the result in *Spider Staging* mandates a similar result here; that is, because Washington law was applied in *Spider Staging*, Washington law should necessarily be applied in the present case.[6] Again, plaintiffs ignore basic differences between the cases.

Under the *Spider Staging* choice of law analysis, the court must first look to the contacts each forum has with the case. If the contacts are evenly balanced, the court then looks to which forum has a greater interest in the determination of the particular issue. *Spider Staging,* at 582.

In *Spider Staging,* the court first found that the contacts were evenly balanced. The court then found that, because Kansas had a limitation on wrongful death recovery and Washington did not, application of Washington law furthered Washington's policy of full compensation. *Spider Staging,* at 583.

Plaintiffs argue that the result in *Spider Staging* necessarily leads to the conclusion that Washington's deterrent policy is the overriding interest in the present case and, therefore, Washington law must apply. However, plaintiffs fail to consider the balancing nature of the test. As already noted, there are significant differences between *Spider*

---

[6]Plaintiffs also appear to be arguing that if the trial court had found that Washington law would be applied, that would necessarily significantly change the balance of the factors and bar dismissal. Plaintiffs' argument merges *Spider Staging*'s forum non conveniens argument with its choice of law analysis. The court in *Spider Staging* did not even reach the choice of law question until after it found that Washington was the appropriate forum.

*Staging* and the present case. The fact that liability is not at issue certainly must be taken into account. Also, Japan has a significant interest in the determination of the damages issue. The accident occurred in Japan, over 500 Japanese nationals died, and a large number of Japanese plaintiffs are involved in the present action. Most importantly, unlike the Kansas plaintiff in *Spider Staging,* plaintiffs here concede that Japanese law provides for full compensation.

By the trial court's own words, application of Japanese law to the issue of damages was not a "factor of paramount importance" in the court's balancing of interests. Even if Washington law is ultimately applied to the damages issue, the balance remains heavily in favor of the Japanese forum.

■ At oral argument plaintiffs also argued that the trial court improperly balanced the *Gulf Oil* factors because it "determined that what forum non conveniens means is to find the most convenient forum, not whether [plaintiff's choice of forum] is so inconvenient as to constitute constructive harassment." Plaintiffs appear to be arguing that there must be a finding of harassment before dismissal can be proper. This is simply not so. A finding of harassment is not necessary for dismissal under either *Gulf Oil* or *Spider Staging.* In setting out the factors to be considered, *Gulf Oil* notes that "[i]t is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant". *Gulf Oil,* at 508. Nowhere does the Court say that absent harassment, dismissal is improper. Furthermore, the court in *Spider Staging* stated that:

> Forum non conveniens refers to the discretionary power of a court to decline jurisdiction when the convenience of the parties and the ends of justice would be better served if the action were brought and tried in another forum.

*Spider Staging,* at 579. Failure to prove harassment does not bar dismissal under either *Gulf Oil* or *Spider Staging.*

In addition to arguing that the trial court erred in its balancing of the *Gulf Oil/Spider Staging* factors, plaintiffs

also rely on *Spider Staging* to urge this court to adopt a rule that would limit the trial court's discretion in forum non conveniens motions when the defendant is a Washington manufacturer and the plaintiff is a nonresident. According to plaintiffs, such a rule is needed to hold defendant accountable for its actions and to further the State's interest in deterring wrongful conduct. Plaintiffs' goal is a valid one. However, their reliance on *Spider Staging* to attempt to limit the trial court's discretion is misplaced for three reasons.

First, while the State's interest in deterring wrongful conduct by Washington manufacturers weighed heavily in the court's resolution of *Spider Staging,* the State's interest in deterrence was factored into the court's *choice of law analysis,* not the forum non conveniens motion, and then only after the court found the contacts of the parties with Kansas and Washington to be evenly balanced. *Spider Staging,* at 582–83.

Second, and more importantly, *Spider Staging* did not reach the choice of law issue until the forum non conveniens issue was resolved because if the court found that Kansas was the proper forum, Kansas would determine the applicable law. *Spider Staging,* at 579. In resolving the forum non conveniens issue, the court expressly adopted the *Gulf Oil* factors. *Spider Staging,* at 579. There was no mention of deterrence as an overriding State's interest in the forum non conveniens analysis.

Finally, the State's interest in deterrence and holding manufacturers accountable for wrongful conduct is served when plaintiffs are fully compensated for their injuries, regardless of the forum. Plaintiffs have conceded that Japanese law provides full compensation.

### Lesser Deference Standard
The next issue we consider is plaintiffs' contention that the trial court relied on the "lesser deference" standard of *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981), *reh'g denied,* 455 U.S. 928 (1982),

thus adopting a standard that directly conflicts with the standard of *Spider Staging.* In *Spider Staging,* the trial court's dismissal was reversed because "[t]he factors [did not] strongly favor the [defendants]." *Spider Staging,* at 580. Plaintiffs argue that this standard was ignored by the trial court in favor of the "lesser deference" standard of *Reyno.* Plaintiffs further argue that this reliance on the *Reyno* standard amounted to an abuse of discretion requiring reversal of the trial court's dismissal of plaintiffs' case in favor of a Japanese forum. This argument is without merit.

██ Although the trial court looked to *Reyno* for guidance, the court specifically found that "[r]egardless of the degree of deference shown plaintiffs' choice of forum, the Court is persuaded that the balance of private and public interest factors weighs heavily in favor of trial of damages in Japan." Finding of fact 6. Because of this finding, the resolution of the present case does not turn on the lesser deference standard of *Reyno.* However, we take this opportunity to expressly decline to adopt *Reyno.* We do so for three reasons.

First, as federal common law, *Reyno* is not binding on this court. Normally, however, we would certainly consider it as persuasive authority. That persuasiveness is undermined, however, by the fact that the lesser deference standard holding was concurred in by only a 4–person majority.[7]

Second, the relevant portion of the majority opinion consists solely of a few conclusory sentences with no supportive analysis or reasoning. This cursory treatment is especially distressing because the Court appears to be motivated by

---

[7]Justices Powell and O'Connor did not participate in the decision. Justices White, Brennan and Stevens dissented from the portion of the opinion holding that the District Court's balancing of the *Gulf Oil* factors was reasonable and that the lesser deference standard adopted by the District Court was proper.

the need to respond to a maverick Court of Appeals decision, rather than the need to reach a well-reasoned decision.

The Court of Appeals held that "dismissal is never appropriate where the law of the alternative forum is less favorable to the plaintiff." *Reyno,* at 244. In doing so, it was the only circuit court that has considered the issue to take that position. The Supreme Court reversed, stating that the Court of Appeals' holding directly conflicts with the Court's express refusal to set out bright-line rules and the Court's repeated emphasis on the need to retain flexibility in deciding forum non conveniens motions. *Reyno,* at 261.

The Court also expressed concern that if a court could not dismiss the case on grounds of forum non conveniens where dismissal might lead to an unfavorable change in law, "[t]he American courts, which are already extremely attractive to foreign plaintiffs, would become even more attractive. The flow of litigation into the United States would increase and further congest already crowded courts." (Footnote omitted.) *Reyno,* at 252.

The seven sitting Justices joined in that portion of the opinion. A 4-person majority went on to hold that the "District Court properly decided that the presumption in favor of the [plaintiff's] forum choice applied with less than maximum force because the real parties in interest [were] foreign." *Reyno,* at 261. The Court stated that this distinction is "fully justified." *Reyno,* at 255. In support of this result, the Court offers no more than the following analysis:

> In *Koster* [*v. (American) Lumbermen's Mut. Cas. Co.,* 330 U.S. 518 (1947)], the Court indicated that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

(Footnote and citation omitted.) *Reyno,* at 255–56.

The Court's logic does not withstand scrutiny. The Court is comparing apples and oranges. Foreigners, by definition, can never choose the United States as their home forum. The Court purports to be giving lesser deference to the foreign plaintiffs' choice of forum when, in reality, it is giving lesser deference to *foreign plaintiffs,* based solely on their status as foreigners. More importantly, it is not necessarily less reasonable to assume that a foreign plaintiff's choice of forum is convenient. Why is it less reasonable to assume that a plaintiff from British Columbia, who brings suit in Washington, has chosen a less convenient forum than a plaintiff from Florida bringing the same suit? To take it one step further, why is it less reasonable to assume that a plaintiff, who is a Japanese citizen residing in Wenatchee, who brings suit in Washington, has chosen a less convenient forum than a plaintiff from Florida bringing the same suit?

The Court's reference to the attractiveness of United States courts to foreigners, combined with a holding that, in application, gives less deference to foreign plaintiffs based on their status as foreigners, raises concerns about xenophobia. This alone should put us on guard.

Finally, we decline to adopt *Reyno* because it simply is not necessary. Proper application of the *Gulf Oil* factors alone will lead to fair and equitable results. Under *Gulf Oil,* the decision whether or not to dismiss is, and will continue to be, based on the balancing of the factors as they relate to the plaintiff's choice of forum, not the plaintiff's status. This is as it should be. Furthermore, application of the *Gulf Oil* factors adequately protects against any perceived threat of foreign plaintiffs flooding United States courts. Granting foreign plaintiffs equal deference will not result in more foreign cases being heard here if the balance of private and public interest factors in those cases does not otherwise favor a United States forum. For example, the *Reyno* Court held that the District Court did not abuse its discretion in deciding that the private and public interest factors favored trial in Scotland. *Reyno,* at 261. Thus, the

result would have been the same without the application of the lesser deference standard.

## Fundamental Fairness

Plaintiffs also argue that requiring them to bring their damages case in Japan is fundamentally unfair for two reasons. First, plaintiffs contend that the Japanese legal system is cumbersome. In that regard, the trial court found:

> There has been a great deal of material provided to the Court about the Japanese legal system and its judicial process. Everything the Court has read and heard leads the Court to believe that the Japanese court system can and will respond effectively to the challenges of assessing the claims of its citizens for damages to compensate them for their grievous losses.

Finding of fact 10. Plaintiffs did not challenge this finding of fact. Furthermore, the trial court expressly reserved the plaintiffs' right to return to King County "if the actions cannot be handled expeditiously in Japan."

Plaintiffs' second argument goes to the issue of "solatium", the Japanese term for general damages available to plaintiffs who prove that the defendant was guilty of gross negligence. According to plaintiffs, solatium will be awarded only if they prove design defect. Thus, they contend, the defendant's liability is still at issue. The trial court found as follows:

> The courts of Japan are an adequate and available alternative forum. . . . Japanese law provides an adequate remedy for plaintiffs' injuries. Substantial damages may be recovered for wrongful death under the laws of Japan.

Finding of fact 8. Again, plaintiffs did not challenge this finding. More importantly, plaintiffs concede that Japanese law provides full compensation. At oral argument, plaintiffs also conceded that proceeding in the Japanese courts will not deprive them of their right to prove issues supporting a solatium award.

In sum, fundamental fairness does not require reversal in this case. Whenever a balancing test is used, as it is here, the result is necessarily fact specific. Under the facts of this case, dismissal was proper. This does not, however, mean that dismissal will be proper whenever foreign plaintiffs

seek access to our courts. In each case, the factors must be weighed and balanced.

Based on the trial court's findings and the balancing of the private and public interest factors, the dismissal was not "manifestly unfair, untenable or unreasonable." *General Tel. Co. v. Utilities & Transp. Comm'n*, 104 Wn.2d 460, 474, 706 P.2d 625 (1985). Accordingly, we hold that the trial court did not abuse its discretion in granting Boeing's forum non conveniens motion.

## II

### BIFURCATION

■ Under the civil rules, a trial court may order a separate trial of liability and damages "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy . . . always preserving inviolate the right of trial by jury." CR 42(b). While it is not a procedure to be liberally applied, the decision to bifurcate is within the discretion of the trial court. *Maki v. Aluminum Bldg. Prods.*, 73 Wn.2d 23, 25, 436 P.2d 186 (1968); *Brown v. General Motors Corp.*, 67 Wn.2d 278, 282, 407 P.2d 461 (1965).

Plaintiffs contend that the bifurcation resulted in the court conducting a partial review of the case, which focused only on damages. Plaintiffs equate applying the forum non conveniens analysis to only the damages case with failing to apply all the factors as required by *Gulf Oil* and *Spider Staging*. This argument is without merit.

When Boeing renewed its motion to dismiss as to the Japanese plaintiffs, liability was no longer at issue.[8] The

---

[8]Plaintiffs also argue that the trial court abused its discretion by disregarding findings of fact from the first motion when deciding the second motion. This argument is without merit. Liability was no longer at issue and the motion was limited to the Japanese plaintiffs. The trial court entered new findings as they applied to the motion before it.

trial court applied the *Gulf Oil* factors to the only remaining issue—damages.[9] If the trial court did not abuse its discretion in applying the *Gulf Oil* factors, any abuse of discretion requiring reversal must necessarily arise from the order bifurcating the action.

Other courts have conditioned forum non conveniens dismissals on defendant's willingness to stipulate to liability in the alternative forum. *See, e.g., Pain v. United Technologies Corp.*, 637 F.2d 775, 783–84 (D.C. Cir. 1980), *cert. denied*, 454 U.S. 1128 (1981); *Jennings v. Boeing Co.*, 660 F. Supp. 796, 809 (E.D. Pa.), *amended*, 677 F. Supp. 803 (1987), *aff'd*, 838 F.2d 1206 (3d Cir. 1988); *In re Disaster at Riyadh Airport*, 540 F. Supp. 1141, 1155 (D.D.C. 1982). *See also Bouvy–Loggers v. Pan Am. World Airways, Inc.*, 15 Av. Cas. 17,153 (S.D.N.Y. 1978) (motion to dismiss granted on damages issue where defendants agreed not to contest liability for compensatory damages if plaintiffs agreed not to seek punitive damages).

There is only one reported case where a trial court bifurcated the issues of liability and damages in the context of a forum non conveniens motion. In *Radigan v. Innisbrook Resort & Golf Club*, 150 N.J. Super. 427, 375 A.2d 1229 (1977), the trial court found that New Jersey, plaintiff's home forum, was an inconvenient forum for trying the liability issue in the personal injuries action, but not for trying the damages issue. The court bifurcated the two issues and directed that the liability issue be tried in Florida, defendant's home forum, followed by a trial on damages in New Jersey. *Radigan*, at 429. The appellate court stated that "[w]hile such a bifurcation, in an appropriate case,

---

[9]Plaintiffs did not assign error to the trial court's finding that "Boeing's liability for compensatory damages will not be at issue in Japan. The Court can, and will, condition dismissal on Boeing's agreement to admit liability to plaintiffs for compensatory damages in Japan and not to oppose recognition in Japan of judgment on liability entered by this Court." Finding of fact 15.

seems like a sensible idea, we entertain some doubt whether it would be permissible." *Radigan,* at 430. However, the court declined to resolve the issue, finding that the bifurcation itself was an abuse of discretion supporting reversal because the circumstances did not support a finding that Florida was the more convenient forum as to liability. *Radigan,* at 430.

*Radigan* is of little use in the current analysis, both because the court declined to rule whether bifurcation was "permissible" and because the trial court in *Radigan* contemplated two separate trials, with the Florida court deciding the liability issue and the parties then returning to New Jersey for a damages trial. In the present case, as in cases cited above, the liability issue was resolved without a trial and dismissal was granted to resolve the only remaining issue, damages.

## III
### TREATY

Plaintiffs contend that the trial court violated the treaty rights of the Japanese nationals by dismissing their claims, while retaining jurisdiction over the claims brought by the non–Japanese nationals. In doing so, plaintiffs argue, the trial court denied plaintiffs "most–favored–nation treatment" guaranteed to the Japanese plaintiffs by treaty. Treaty of Friendship, Commerce, and Navigation, Apr. 2, 1953, United States–Japan, 4 U.S.T. 2063, 2077, T.I.A.S. No. 2863. This argument is without merit.

The treaty defines "national treatment" and "most–favored–nation treatment" as meaning treatment "upon terms no less favorable" than citizens "in like situations". 4 U.S.T. at 2079. The situation of the Japanese citizens is comparable to a United States citizen who resides in one state bringing an action in a sister state. In fact, while arguing that the treaty bars the application of the "lesser deference" standard of *Reyno,* plaintiffs assert that the treaty entitles the Japanese plaintiffs to the same benefits enjoyed by the Kansas resident in *Spider.*

■ While, as plaintiffs note, the issue of treaty rights was not raised in *Reyno,* a number of federal courts have found that the treaty does not serve to bar dismissal of foreign plaintiffs on forum non conveniens grounds. *See, e.g., Jennings v. Boeing Co., supra* at 800 (the treaty affords Irish citizens no greater rights than those afforded to United States citizens in a diversity action); *Pain v. United Technologies Corp., supra* at 797 (dismissal of Norwegian and French plaintiffs affirmed; plaintiffs raised issue of treaty rights). *But see Irish Nat'l Ins. Co. v. Aer Lingus Teoranta,* 739 F.2d 90, 92 (2d Cir. 1984) (reversing dismissal because the District Court did not apply the same forum non conveniens standards to Irish citizen that it would have applied to a United States citizen; the court does not say whether the standard to be applied is that applicable to a resident of the chosen forum or resident of a sister state).

As already stated, the decision below did not turn on the applicability of the "lesser deference" standard of *Reyno.* As such, even if that standard is found to be a violation of treaty rights, reversal is not required. More importantly, plaintiffs' reliance on the trial court's retention of jurisdiction over the non–Japanese nationals to support a claim of treaty rights violation is misplaced.

Boeing's motion to dismiss was limited to the Japanese plaintiffs and was granted by the trial court based on the balancing of factors as they related to the damages claims of the Japanese nationals. Again plaintiffs ignore the nature of the test. Neither *Gulf Oil* nor *Spider Staging* requires that if a forum is convenient as to any foreign plaintiff that it must also be found to be convenient as to all foreign plaintiffs, regardless of numbers, volume of evidence, language barriers, or situs of the accident giving rise to the claims.

In summary, we hold that the trial court did not abuse its discretion in either the bifurcation or the forum non conveniens dismissal. We further hold that the dismissal did not violate the treaty rights of the Japanese nationals.

We also take this opportunity to expressly decline to adopt the lesser deference standard of *Reyno*. Finding no error, we affirm.[10]

CALLOW, C.J., BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, and SMITH, JJ., and McINTURFF, J. Pro Tem., concur.

UTTER, J. (concurring)—I write separately to emphasize that the civil rules do not sanction international bifurcation of cases. Because of this, the trial court's decision to bifurcate this case was an abuse of discretion. Because the parties did not complete pretrial discovery or try the case, this error cannot justify overruling the trial court's decision to dismiss the action. I agree that forum non conveniens principles justify the trial court's dismissal of the Japanese plaintiffs' case, in spite of the bifurcation error, and would affirm the trial court on that basis only.

Bifurcation under CR 42(b) applies to cases within a jurisdiction. The trial court in this case ruled sua sponte that the liability issue and the damage issue should be bifurcated. Majority, at 126. The court ruled that the issue of liability would be determined in this jurisdiction, but delayed resolution of the question of where damages would be determined. Clerk's Papers, at 963–76. The court dismissed the plaintiffs' Consumer Protection Act claims, but entered judgment against Boeing on the issue of compensatory damages, relying on Boeing's admissions. The court then dismissed the claims of the Japanese nationals on forum non conveniens grounds.

Civil Rule 42(b) authorizes bifurcation in these words:

> The court . . . may *order* a separate trial of . . . any separate issue . . . always preserving inviolate the right of trial by jury.

(Italics mine.) The rule only authorizes trials which a court can order. A superior court judge cannot order a trial in Japan. Japan is a sovereign nation. Thus, this rule cannot

---

[10]Both parties filed motions to supplement the record with affidavits. Both motions are denied.

authorize bifurcation between sovereign states. Of the hundreds of reported cases applying this rule and its federal equivalent, Fed. R. Civ. P. 42(b), the parties have identified only one case involving bifurcation between jurisdictions. *See Radigan v. Innisbrook Resort & Golf Club,* 150 N.J. Super. 427, 375 A.2d 1229 (1977) (overruling trial court order transferring litigation of liability to Florida while trying the damages portion of the action in New Jersey). As the majority points out, the New Jersey court doubted the validity of interjurisdictional bifurcation. Majority, at 142. It did not address the question in general terms, however. Instead, it held that the particular use of bifurcation in that case was an abuse of discretion. Majority, at 142.

The advisory committee on civil rules, which helped create the federal counterpart to CR 42, said that bifurcation should "'be encouraged where experience has demonstrated its worth". 9 C. Wright & A. Miller, *Federal Practice* § 2390, at 300 (1971). International bifurcation of liability and damage questions has apparently never been tried, let alone demonstrated worthy.

No statute or court rule authorizes transfer of single issues between jurisdictions. *See Cray v. General Motors Corp.,* 389 Mich. 382, 207 N.W.2d 393 (1973) (noting that no administrative machinery exists to transfer cases between states); *see also* 28 U.S.C. § 1404(a) (1988) (authorizing transfer of cases between federal courts). Generally, complex litigation requires that the matter be handled by one judge, not by multiple jurisdictions. *See* 1 J. Moore, *Federal Practice* § 20.12 (2d ed. 1986) (complex litigation should ordinarily be assigned to one judge for all purposes, including pretrial proceedings).

An examination of the record here shows why bifurcation between jurisdictions should be disfavored. The affidavits submitted to the trial court by experts on Japanese law disagreed about whether a Japanese court would consider the judgment made as to liability a final one to be given res judicata effect in Japan. Accordingly, the trial court made no finding of fact as to the res judicata issue. Moreover,

because solatium depends in some measure on the degree of culpability, the liability judgment may not be sufficient to allow the Japanese court to determine damages. Although the record establishes that the Japanese judiciary can fairly try the case and award full compensation, it does not establish that it will avoid duplication of the effort already expended here.

Piecemeal international litigation raises the possibility not just of separate trials, but of two sets of appeals and international judicial conflict in the resolution of one case. This court has stated that bifurcation under CR 42 "should be carefully and cautiously applied" and used only to promote convenience or avoid prejudice. *Brown v. General Motors Corp.*, 67 Wn.2d 278, 282, 407 P.2d 461 (1965). Most importantly, this court has stated that "[p]iecemeal litigation is not to be encouraged", especially where the issues of liability and damages are interwoven in a personal injury case. *Brown*, 67 Wn.2d at 282.

This court upheld bifurcation in *Brown* because the court was satisfied that "the issues of liability and damages were singularly separable and distinct". *Brown*, at 283. In this case, however, a component of damages under Japanese law, called solatium, may depend, in part, on the degree of culpability of the defendant. See Clerk's Papers, at 2120–21, 1607–09.[11] Where culpability and damages are interwoven, bifurcation is not appropriate even when both trials are held in one forum. *See United Air Lines, Inc. v. Wiener*, 286 F.2d 302 (9th Cir.) (reversing trial court order bifurcating a trial when exemplary damages are sought), *cert. denied*, 366 U.S. 924 (1961).

---

[11]The plaintiffs conceded that Boeing's apparent willingness to concede liability made solatium unimportant as a factor differentiating Japanese law from Washington law for purposes of choosing the applicable law. Clerk's Papers, at 1383. The trial court did not even consider the question of whether the liability determination and the damages question would be interconnected when it bifurcated the case sua sponte. This failure alone warrants the conclusion that the decision was an abuse of discretion.

I would hold, therefore, that bifurcation is an abuse of discretion absent a determination that the trials will be held in one jurisdiction. Because no trial was actually held here and discovery as to liability was not completed,[12] the error in bifurcation cannot justify overruling the trial court's forum non conveniens determination. *Cf. Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1335 (9th Cir. 1984) (overturning District Court's forum non conveniens dismissal because the court failed to consider that discovery had been completed and the parties were ready for trial), *cert. denied,* 471 U.S. 1066 (1985). The trial court rulings may cause a trial in Japan, but they did not create two trials in different jurisdictions. The result obtained was not different from that of a number of other cases in which defendants have agreed not to contest liability abroad. *Pain v. United Technologies Corp.,* 637 F.2d 775 (D.C. Cir. 1980), *cert. denied,* 454 U.S. 1128 (1981); *In re Disaster at Riyadh Airport,* 540 F. Supp. 1141 (D.D.C. 1982); *Jennings v. Boeing Co.,* 660 F. Supp. 796 (E.D. Pa.), *amended,* 677 F. Supp. 803 (1987), *aff'd,* 838 F.2d 1206 (3d Cir. 1988); *Bouvy–Loggers v. Pan Am. World Airways, Inc.,* 15 Av. Cas. 17,153 (S.D.N.Y. 1978). While the courts in some of these cases have considered the location of evidence as to liability in making their forum non conveniens inquiry, *see Pain,* 637 F.2d at 786–87; *Riyadh Airport,* 540 F. Supp. at 1146–47, other courts have not. *See Jennings,* 660 F. Supp. at 805; *Bouvy–Loggers,* 15 Av. Cas. at 17,154. We cannot conclude that the trial court abused its discretion because it considered the location of evidence as to liability irrelevant once Boeing had conceded liability. *See In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1166 (5th Cir. 1987) (court should consider effect of stipulations, discovery, admissions, and the joinder of parties at the time

[12]The record shows that the plaintiffs sought discovery on questions relating to liability, but Boeing resisted. The trial court stayed discovery pending resolution of the forum non conveniens motion. Most of the discovery which occurred concerned the location of witnesses and other matters relevant to the forum non conveniens determination.

motion is filed in deciding whether to dismiss on forum non conveniens grounds), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez,* 109 S. Ct. 1928, *vacated in part, aff'd in part on remand,* 883 F.2d 17 (5th Cir. 1989).

The majority correctly reaffirms our holding that the trial court may only disturb the plaintiffs' choice of forum if the balance of factors strongly favors the defendant. Majority, at 135–39; *Johnson v. Spider Staging Corp.,* 87 Wn.2d 577, 579–80, 555 P.2d 997 (1976) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947)). Given the findings of the trial court, we cannot conclude that it abused its discretion in deciding to disturb the plaintiffs' choice in this case. The trial court's bifurcation decision, however, was an abuse of discretion and we should so hold.