2015 JUN 22 AM 9: 53



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

BELLA ACHARYA, )
         ) No. 71420-1-I
           Respondent, )
         ) DIVISION ONE
      v. )
         ) UNPUBLISHED OPINION
MICROSOFT CORPORATION, a )
Washington corporation, )
         ) FILED: June 22, 2015
           Appellant. )
         )

APPELWICK, J. — Microsoft seeks dismissal of Acharya's WLAD suit, based on a forum selection clause in the employment contract between Acharya and a Microsoft subsidiary in London, or based on the doctrine of forum non conveniens. Acharya alleges violations by Microsoft occurring in Washington. The trial court did not err in denying the motion to dismiss. We affirm.

## FACTS

Bella Acharya was a longtime employee of Microsoft Corporation, working at the company in various positions for roughly 16 years. In 2008, Acharya served as a business development manager in Microsoft's Advertising Business Group (ABG) in Redmond. Acharya worked with her supervisor to create a new position for her on an international team. According to Acharya, the position was initially conceived as Redmond-based and not associated with any foreign subsidiary. But, for "practical business reasons," it was decided that Acharya would relocate to London and manage the team from there.

As a term of her new position, Acharya resigned from her job at Microsoft and joined Microsoft Global Resources GmbH (MGR), a foreign subsidiary of Microsoft. According to Microsoft, this is a "common business practice among multinational employers and is the optimum way to structure international employment for taxation and administration purposes."

On July 21, 2008, a Human Resources (HR) employee from Microsoft e-mailed Acharya her MGR employment contract. The e-mail said, "It is a pleasure to confirm the terms and conditions of your MGR (Microsoft Global Resources) international assignment offer of ABG International Sales Manager based in London." The contract provided that the "terms of this agreement shall be construed in accordance with and governed in all respects by the laws of Switzerland (without giving effect to principles of conflicts of laws)." It further stated that "[a]ny dispute, controversy or claim arising under, out of or in relation to this Employment Agreement, its valid conclusion, binding effects, interpretation, including tort claims, shall be referred and finally determined by the ordinary courts at the domicile of MGR in Switzerland." Acharya signed the contract on August 26, 2008.

Accompanying the contract was an international offer letter of assignment, which stated, "Throughout the term of this assignment, you will remain an employee of MGR." The letter provided that Acharya's assignment was anticipated to be for two years. It further stated that at the end of her assignment there was "no guarantee that [Acharya] will obtain another assignment with MGR or a new position with another Microsoft affiliate."

2

For the first 20 months of Acharya's assignment in London, she reported to Shawn McMichael, the same Microsoft manager to whom she previously reported in Redmond. In July 2010, Acharya began reporting to a Belgium-based supervisor, Olivier van Duüren. Van Duüren was employed by Microsoft NV, another Microsoft subsidiary. At that time, van Duüren reported to a France-based manager, who in turn reported to the Vice President of Microsoft in Redmond.

While working with van Duüren, Acharya experienced hostile gender-based conduct. For example, van Duüren told Acharya that "'there's a word for women like you,'" accused her of being a "queen sitting on a throne," and "taunted her for appearing 'emotional.'" When van Duüren reviewed Acharya's performance in 2011, he gave her a very poor rating. This varied greatly from Acharya's performance reviews in the past, when she had been rated very positively. Acharya perceived van Duüren's ratings as unfair and motivated by gender-based discrimination.

Acharya reported this to van Duüren's supervisor, who worked at Microsoft headquarters in Redmond. Her concerns were transferred to the HR and legal departments of Microsoft in Redmond. Acharya was then contacted by the Employee Relations Investigation Team (ERIT), which consisted of Microsoft employees in Redmond. On this record, it appears that ERIT member Yong Lee was investigating Acharya's claim as early as May 11, 2012. In July, Lee informed Acharya that he found no violation of Microsoft policy. Acharya challenged this finding on August 2. On September 7, ERIT member Judy Mims told Acharya that she would review Lee's findings. On September 26, Mims issued a memo to Acharya informing her that Lee's

3

findings were warranted and that there were no policy violations. No disciplinary action was taken against van Duüren.

Acharya attempted to leave her position at MGR and applied for jobs at Microsoft in King County. She was not hired for any of the positions. Acharya discovered that van Duüren had been "poisoning the well" about her by making negative comments to potential hiring managers in Redmond. Acharya also learned that she was turned down for a job due to "the concerns [she] had raised about Olivier van Duüren." Acharya ultimately returned to King County. She has been unable to find fulltime work since.

On July 5, 2013, Acharya brought an employment discrimination suit against Microsoft in King County Superior Court. Citing the Washington Law Against Discrimination (WLAD),[1] she asserted that Microsoft, as her employer, discriminated against her because she is an older woman; failed to prevent, stop, or remedy the discrimination against her; retaliated against her for reporting discrimination; negligently failed to hire, retain, monitor, and supervise its HR and ERIT departments; and negligently failed to mentor, supervise, and properly discipline van Duüren. She asserted that Microsoft's discriminatory decisions were made in Washington.

Microsoft denied Acharya's claims. It also denied that it was Acharya's employer at the time of the alleged discrimination. As affirmative defenses, it asserted that the Washington court was an improper venue and that Acharya's claims were governed by Swiss and United Kingdom law.

On October 15, 2013, Microsoft moved to dismiss Acharya's suit. Microsoft argued that the court should enforce the forum selection clause in Acharya's employment

---

[1] Chapter 49.60 RCW.

4

contract with MGR, "which identifies Switzerland as the required forum for resolving any dispute, claim, or tort related to her MGR employment." Microsoft further argued that the suit should be dismissed on forum non conveniens grounds. In addition, Microsoft maintained that Acharya had no legitimate legal claims against Microsoft and that MGR was the proper defendant in the case.

Acharya opposed the motion. She asserted that Microsoft was the proper defendant, because Microsoft and MGR constituted an "'integrated enterprise.'" She further asserted that Washington was the proper forum, because her claims did not "'arise' under" or otherwise concern her employment with MGR. She maintained that enforcing the forum selection clause would deprive her the ability to vindicate her rights, because she could not afford to litigate in Switzerland and would be unable to bring her WLAD claims there.

At the motion hearing, Microsoft cited a newly decided United States Supreme Court case, Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas, ___ U.S. ___, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013). In Atlantic Marine, the Court established a new standard for evaluating forum selection clauses, requiring enforcement of the clause unless extraordinary circumstances unrelated to the convenience of the parties dictated otherwise. Id. at 581-82. Microsoft argued that the trial court should apply Atlantic Marine and dismiss Acharya's suit.

The trial court denied Microsoft's motion to dismiss.

Microsoft moved for discretionary review of the denial. We granted review.

DISCUSSION

Microsoft argues that the trial court erred in denying its motion to dismiss Acharya's complaint on the basis of the forum selection clause.[2] Microsoft further asserts that the trial court erred in denying its motion on the basis of forum non conveniens.

At the heart of this dispute is whether Microsoft was Acharya's employer-in-fact and could therefore enforce the contract terms agreed to between Acharya and MGR, specifically the forum selection clause. In reviewing the denial of a motion to dismiss, we apply the same standard as the trial court: the nonmoving party's evidence, together with all reasonable inferences that may be drawn therefrom, must be accepted as true. Tyner v. Dep't of Soc. & Health Servs., 92 Wn. App. 504, 514, 963 P.2d 215 (1998), reversed on other grounds, 141 Wn.2d 68, 1 P.3d 1148 (2000). Acharya is the nonmoving party, and she asserted that Microsoft was her employer when she suffered the alleged discrimination. Accordingly, we operate with the inference that Microsoft was Acharya's employer at the time of the alleged discriminatory actions. Microsoft is thus entitled to invoke the provisions of the employment contract. Acharya's claims against Microsoft stem from the discrimination she allegedly suffered while performing the employment contemplated by the contract. The forum selection clause applies to "[a]ny dispute, controversy or claim arising under, out of or in relation to" the contract. Therefore, Microsoft was entitled to assert a defense based on that forum selection clause.

---

[2] As part of its argument that the forum selection clause controls, Microsoft asserts that Acharya's "allegations do not state claims under the WLAD." But, whether Acharya raised proper claims under WLAD and whether Washington is the proper forum to litigate her claims are two distinct questions. The latter is the claim Microsoft makes on appeal. The former Microsoft raised separately below but does not renew.

I. Forum Selection Under Atlantic Marine

Microsoft argues that this court should adopt the Atlantic Marine test in favor of our traditional analysis. Our Supreme Court has not yet considered this question.

In Atlantic Marine, a Virginia corporation and a Texas corporation entered into a construction contract that contained a forum selection clause stating that all disputes between the parties shall be litigated in Virginia. 134 S. Ct. at 575. However, when a dispute about payment arose, the Texas corporation brought suit in the Western District of Texas. Id. at 576. The Virginia corporation moved to transfer the case to the Eastern District of Virginia under 28 U.S.C. § 1404(a), a codification of the doctrine of forum non conveniens. Id. at 576, 580. The district court denied the motion. Id. at 576. The court considered a list of public and private interest factors, including the forum selection clause. Id. It concluded that the Virginia corporation failed to meet its burden of showing that transfer "'would be in the interest of justice or increase the convenience to the parties and their witnesses.'" Id. The Fifth Circuit affirmed, reasoning that the district court did not abuse its discretion in denying the transfer. Id.

The Supreme Court reversed. Id. at 584. The Court recognized that, under federal law, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." Id. at 580. Ordinarily, a forum non conveniens analysis implicates both private and public interests. Id. at 581. However, the Court held that where the parties' contract contains a valid forum selection clause, the clause preempts the consideration of private interests:

> When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court

7

accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.

Id. at 582.  In such a scenario, the court "may consider arguments about public-interest factors only.  Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."  Id. (citation omitted).  The Court concluded by reasoning:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations.  A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place.  In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

Id. at 583.

In the past, Washington courts have adopted federal analyses regarding forum selection clauses.  For example, in Dix, the Washington Supreme Court agreed with the federal test for whether a forum selection clause was enforceable and recognized that the test was generally in agreement with other Washington appellate decisions.  Dix v. ICT Group, Inc., 160 Wn.2d 826, 834-35, 161 P.3d 1016 (2007).  The federal test at that time—like the current Washington test—focused on whether it would be "unreasonable" to enforce a forum selection clause.  See id. at 834.  In addition, the Court of Appeals recognized that the Washington standard requiring submission of evidence by the party challenging a clause's enforceability is "consistent with the standard articulated by the U.S. Supreme Court."  Voicelink Data Servs., Inc. v. Datapulse, Inc., 86 Wn. App. 613, 624, 937 P.2d 1158 (1997).  We note, however, that Dix and Voicelink did not drastically

8

change Washington law—rather, they recognized consistencies between state and federal tests. 160 Wn.2d at 835; 86 Wn. App. at 624.

But, Washington courts follow federal analysis "only if we find its reasoning persuasive." Washburn v. City of Federal Way, 178 Wn.2d 732, 750, 310 P.3d 1275 (2013). The Atlantic Marine Court's conclusion rested largely on effecting justice by respecting the parties' right to contract. See 134 S. Ct. at 583. The contract in that case was between two corporations on equal footing. Id. at 575. Accordingly, it made sense to consider their contract the product of thoughtful, purposeful bargaining that should not be open to renegotiation. See id. at 583. That is not the case here. The parties here are not two corporations, but an individual and a powerful corporation (or its subsidiary). The record does not otherwise suggest equal bargaining positions and does not document any actual negotiations as to this term. Therefore, the Atlantic Marine Court's reasoning that a forum selection clause "may have affected . . . contractual terms [or the] agreement to do business together in the first place" does not stand here. See id. Unlike the arm's length transactions conducted between corporations, the employer-employee relationship has a clear hierarchy. To apply a presumption otherwise does not serve "'the interest of justice.'" See id.

We decline to adopt Atlantic Marine on these facts.

II.  Forum Selection Under Traditional Analysis

When reviewing decisions on enforceability of forum selection clauses, we generally apply the abuse of discretion standard. Dix, 160 Wn.2d at 833. A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds, or if its ruling is based on an erroneous view of the law or involves application

of an incorrect legal analysis. Id. Therefore, "the abuse of discretion standard gives deference to a trial court's fact-specific determination on enforceability of a forum selection clause, while permitting reversal where an incorrect legal standard is applied." Id. But, if a pure question of law is presented—such as whether public policy precludes giving effect to a forum selection clause in particular circumstances—we apply a de novo standard of review. Id. at 833-34.

When evaluating the enforceability of a forum selection clause, Washington courts generally ask whether enforcement would be unreasonable:

> "(1) [A] forum-selection clause is presumptively valid and enforceable and the party resisting it has the burden of demonstrating that it is unreasonable, (2) a court may deny enforcement of such a clause upon a clear showing that, in the particular circumstance, enforcement would be unreasonable, and (3) the clause may be found to be unreasonable if (i) it was induced by fraud or overreaching, (ii) the contractually selected forum is so unfair and inconvenient as, for all practical purposes, to deprive the plaintiff of a remedy or of its day in court, or (iii) enforcement would contravene a strong public policy of the State where the action is filed."

Id. (alteration in original) (quoting Gilman v. Wheat, First Sec., Inc., 345 Md. 361, 378, 692 A.2d 454 (1997)).

Microsoft contends that there is nothing unreasonable about an agreement that employees working in Europe for a European company will settle their disputes in a European forum. But, for purposes of the motion under review, we presume that Microsoft, a Washington corporation, was Acharya's employer at the time of the alleged wrongful conduct. See Tyner, 92 Wn. App. at 514 (when reviewing the denial of a motion to dismiss, all facts and inferences are considered in light most favorable to nonmoving party). And, Acharya asserts that Microsoft violated Washington law by committing discriminatory actions in Washington.

Against this backdrop, Acharya argues that it would contravene public policy to require her to litigate in Switzerland, thus "relinquish[ing] the robust civil rights afforded to her under the WLAD."[3] Under Washington law, the right to be free from discrimination is nonnegotiable and cannot be waived in contract. Cf. Commodore v. Univ. Mech. Contractors, Inc., 120 Wn.2d 120, 129, 131, 132, 839 P.2d 314 (1992) (holding that "nonnegotiable state law rights [including discrimination] . . . cannot be waived in contract" and are thus independent of collective bargaining agreements); see also Ware v. Mut. Materials Co., 93 Wn. App. 639, 644, 970 P.2d 332 (1999); Bruce v. Nw. Metal Prods. Co., 79 Wn. App. 505, 513, 903 P.2d 506 (1995). But, under the forum selection clause and the choice of law provision, Acharya's WLAD claim would not be cognizable. Preventing a Washington plaintiff from enforcing Washington law is contrary to public policy. See, e.g., Dix, 160 Wn.2d at 837 (finding that a forum selection clause violated public policy because it "seriously impair[ed] a plaintiff's ability to bring suit to enforce" the Washington Consumer Protection Act, ch. 19.86 RCW). It would be unreasonable to enforce the forum selection and choice of law clauses, thereby precluding Acharya from pursuing her WLAD claims.

Microsoft protests that foreseeable inconvenience is not a basis for refusing to enforce a forum selection clause. As support for this proposition, Microsoft cites Keystone Masonry, Inc. v. Garco Construction, Inc., 135 Wn. App. 927, 147 P.3d 610 (2006)). In Keystone, two corporations entered into a construction contract involving a school in Pierce County and setting venue in Spokane County. Id. at 930. Keystone sued Garco

---

[3] Acharya also argues that the clause is unconscionable. Because we conclude that on these facts the clause contravenes public policy, we need not reach this argument.

11

for breach of contract and filed suit in Pierce County Superior Court. Id. Garco, whose principal place of business was in Spokane, moved for change of venue. Id. at 930-31. Keystone opposed the motion under the doctrine of forum non conveniens, arguing that at least 19 witnesses were located in Pierce County. Id. at 931. The trial court denied the motion. Id. The Court of Appeals reversed, reasoning that where the parties have selected a forum, the forum non conveniens factors do not apply. Id. at 934. The court further stated that "inconvenience foreseeable by the parties at the time they entered the contract cannot render a forum selection unenforceable." Id. at 934.

In so holding, Keystone relied on Bank of America, N.A. v. Miller, 108 Wn. App. 745, 748-49, 33 P.3d 91 (2001). See 135 Wn. App. at 934. There, the Millers leased cattle for their Michigan farm from a Washington leasing company. 108 Wn. App. at 746. The lease provided that the parties would file any lawsuits in Washington. Id. When the leasing company became financially unstable, Bank of America purchased the lease. Id. The Millers sued the leasing company in Michigan, arguing that it failed to fully fund the lease. Id. The Bank then sued the Millers in Washington for failing to pay their rent. Id. The Millers moved to dismiss the Bank's case. Id. They argued that trial in Washington was "seriously inconvenient," because their witnesses lived in Michigan and their related lawsuit was pending there. Id. at 748. The trial court granted the motion to dismiss. Id. at 746. The Court of Appeals reversed, reasoning:

> The Millers have not specified the witnesses they intend to call, the issues the witnesses would testify about, the evidence they intend to offer, and why that evidence would not be available in Washington. Without more, the Millers have not shown that litigating in Washington is any more inconvenient now than it was when they signed the lease agreement.

Id. at 749.

12

Microsoft argues that here, it was likewise foreseeable that litigation in Europe could be inconvenient. However, in Keystone and Miller, the plaintiffs argued that litigation in the designated forum would be less convenient due to witness location—not that the designated forum would prevent them from seeking relief. See Keystone, 135 Wn. App. at 934; Miller, 108 Wn. App. at 748. In the present case, litigation in the designated forum, together with the choice of law clause, would foreclose Acharya's ability to pursue her claim for discrimination cognizable under WLAD. Public policy in Washington dictates that such WLAD rights may not be waived by contract. Keystone and Miller do not establish that foreseeable inconvenience outweighs the significant public policy interest present here.

The trial court did not err in declining to enforce the forum selection clause.

III. Forum Non Conveniens

Under the doctrine of forum non conveniens, a court may decline a proper assertion of its jurisdiction if the convenience of the parties and the ends of justice would be better served if the action were brought and tried in another forum. Sales v. Weyerhauser Co., 163 Wn.2d 14, 20, 177 P.3d 1122 (2008). "Courts generally do not interfere with the plaintiff's choice of forum where jurisdiction has been properly asserted." Id. at 19. The forum non conveniens doctrine exists to prevent the plaintiff from causing the defendant expense or trouble that is not necessary to the plaintiff's right to pursue a remedy. Id. at 20.

We review a decision on a motion to dismiss on forum non conveniens grounds for abuse of discretion. Myers v. Boeing Co., 115 Wn.2d 123, 128, 794 P.2d 1272 (1990). Because the decision is within the trial court's discretion, courts have declined to set bright

line rules as to when to apply the doctrine. See id. Instead, a court must consider and balance certain private and public factors regarding the relative convenience of the forums. Id.; Sales, 163 Wn.2d at 20.

In deciding whether to dismiss for forum non conveniens, the trial court must first determine whether an adequate alternative forum exists. Klotz v. Dehkhoda, 134 Wn. App. 261, 265, 141 P.3d 67 (2006). "[A]n alternative forum is adequate so long as some relief, regardless how small, is available should the plaintiff prevail." Id. Microsoft presented an expert declaration demonstrating that Acharya will have some opportunity for recovery under Swiss law. Acharya presented a competing declaration suggesting that Switzerland is an inferior forum. However, this does not render Switzerland inadequate. See, e.g., id. at 268 ("[T]he fact that the damages recoverable in British Columbia are significantly less than in Washington does not, by itself, render British Columbia an inadequate forum.").

When determining whether to dismiss a case based on forum non conveniens, the private interest factors to be considered are as follows:

> "[T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."

Myers, 115 Wn.2d at 128 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)).

The private interest factors do not compel Switzerland as a forum. None of the alleged discriminatory actions occurred in Switzerland. Although the parties dispute whether the crucial witnesses and documents are in Washington or Europe, none are

located in Switzerland. Rather, the record shows a roughly even balance between other European countries and Washington State.[4] Neither the ease of access to proof nor the ability of obtaining attendance of witnesses weighs in favor in Switzerland. Further, litigating in Switzerland poses a "practical problem" for Acharya. See id. According to Acharya's expert, Swiss law generally does not allow lawyers to take cases on a contingency fee basis. Thus, in addition to the distance she would have to travel, Acharya asserts that she would be unable to afford representation there. Acharya therefore has a strong private interest in litigating in Washington. And, because Microsoft is a Washington corporation, it too would benefit from the convenience of the Washington forum. Microsoft argues that litigating disputes in Switzerland promotes consistent interpretation and application of MGR's employment contracts and obligations. On balance, however, Acharya's financial inability to pursue a suit in Switzerland outweighs Microsoft's interest in maintaining consistent contract application, especially where Acharya's suit implicates actors and actions outside of MGR. The private interest factors weigh in favor of litigating in Washington.

Regarding the public interest factors:

"Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many

---

[4] Acharya maintains that the crucial witnesses are her current and former Microsoft managers and Microsoft's HR and ERIT employees, all of whom are located in King County. She also asserts that she seeks documents located in, or at least accessible in, King County. Microsoft maintains that there are several important witnesses who worked alongside Acharya and van Duüren, most of whom are located in Europe—specifically, the United Kingdom, France, Ireland, Germany, and the Netherlands. Microsoft also asserts Acharya seeks documents "related to" employees located in Belgium, the United Kingdom, and France.

persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

Myers, 115 Wn.2d at 129 (quoting Gulf Oil, 330 U.S. at 508-09).

These factors likewise weigh in favor of litigating in Washington. Acharya, a Washington employee, alleges discrimination by Microsoft, a prominent Washington employer, in violation of the WLAD, a Washington statute. Under the claims alleged, Washington is the origin of this case. Thus, Washington would be the proper forum to absorb the burdens of litigation, such as administrative tasks and jury duty. In addition, there would be a local interest in having this controversy, as alleged, decided here. And, Washington would be a forum "'at home with the state law that must govern the case.'"[5] See id. (quoting Gulf Oil, 300 U.S. at 508-09). The trial court did not abuse its discretion in denying the motion to dismiss on forum non conveniens grounds.

---

[5] Microsoft asserts that a Swiss forum would be better suited for applying the European data privacy laws implicated by this suit. It is conceivable that some of the requested discovery would be subject to such laws. However, the WLAD is the applicable law regarding the merits of this case. Microsoft has not shown that any difficulty in applying European data privacy laws—pertinent to accessing documents—would overcome the "'appropriateness'" of a Washington court trying a case involving its own laws. See Myers, 115 Wn.2d at 129 (quoting Gulf Oil, 300 U.S. at 508-09.). We recognize that, in addition to specifying the forum, the contract provided that the applicable law shall be Swiss law. But, as discussed above, granting a change of forum with that clause intact would displace application of WLAD and is against public policy in Washington. See supra section II. This provides additional public policy reason to find Washington the proper forum under the forum non conveniens analysis.

As pleaded, this case involves Washington parties, Washington law, and conduct that occurred in Washington. The trial court did not err in denying Microsoft's motion to dismiss. We affirm.

WE CONCUR: