Ekundayo PRATT

v.

**UNITED ARAB SHIPPING COMPANY.**

**Civ. A. No. 83–1910.**

United States District Court,
E.D. Louisiana.

May 17, 1984.

Patrick D. McArdle and Laura E. Fahy, New Orleans, La., for plaintiff.

Chaffe, McCall, Phillips, Toler & Sarpy, J. Dwight LeBlanc, Jr., New Orleans, La., for United Arab Shipping Co.

## OPINION

ARCENEAUX, District Judge.

Ekundayo Pratt, a citizen of Sierra Leone, brought this action under the Jones Act, 46 U.S.C. § 688, and the general maritime law against his employer, the United Arab Shipping Company (United Arab), a Kuwaiti joint venture corporation, to recover for injuries sustained on September 29, 1978 in the service of the M/V ARAFAT, as that vessel plied the waters of the Persian Gulf. Defendant moved to dismiss the case on the ground that it was brought in a *forum non conveniens*. For the reasons and subject to the conditions stated below, that motion will be granted and Pratt's case will be conditionally dismissed.

## FACTS

On February 8, 1978, Pratt signed an employment contract in Freetown, Sierra Leone with United Arab to serve as a sailor aboard the M/V ARAFAT. He joined the vessel in Glasgow, Scotland shortly thereafter. Pratt agreed to serve aboard the ARAFAT along with thirty-one other crew members, all of whom, like Pratt, were citizens of Sierra Leone. At that time, the ARAFAT was flying a Kuwaiti flag and was of Kuwaiti registry. On September 29, 1978, Pratt injured his right ankle while climbing a ladder aboard the ARAFAT as that vessel was sailing from Doha, Qatar to Babiyun, Kuwait. The only known witness

to Pratt's injury is a fellow crew member, Edward Duncan.

Pratt spent three months recovering from his injury in hospitals in Kuwait and Sierra Leone. After a period of convalescence, Pratt joined the service of a Mexican shipping concern as a sailor aboard the M/V BOCHA. On June 30, 1980, because his injury was preventing him from performing his seaman's duties, Pratt left the service of the BOCHA while that vessel lay at anchor in Gulfport, Mississippi. He travelled to New Orleans where he met an American citizen, Geneva Scott, whom he married on August 7, 1981. He obtained further medical treatment of his ankle in New Orleans, and on April 13, 1983, filed this suit against United Arab to recover damages for his injury.

United Arab is a joint venture corporation organized in 1977 under the laws of Kuwait. Its co-venturers are the sovereign nations of the United Arab Emirates, Bahrain, Saudi Arabia, Iraq, Qatar and Kuwait. Its directors are citizens of the same countries. United Arab's principal office and controlling base of operation is in Safat, Kuwait. It also maintains an office in London, England. In 1978, the year Pratt was injured, United Arab owned forty-eight vessels which made twelve calls on Louisiana ports. From 1978 through 1982, United Arab had a total income of $2,500,000,000. Over the same period, it earned $330,000,-000 from the voyages of its vessels, which included stops in the United States. The ARAFAT made four calls at U.S. ports, which produced gross earnings of $5,690,-000. While United Arab has no employees of its own working in New Orleans, it utilizes the Kerr Steamship Company as its husbanding agent in the Port of New Orleans. Kerr allows United Arab to use its telephone number to receive local messages.

## LAW

■■■ The doctrine of *forum non conveniens* permits a court to decline jurisdiction even though venue and jurisdiction are proper, on the theory that for the convenience of the litigants and the witnesses, the action should be tried in another judicial forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). In considering a *forum non conveniens* challenge to a maritime suit with foreign contacts, the Court must first determine whether American or foreign law is applicable. If American law applies, the Court lacks jurisdiction to dismiss. *Fisher v. Agios Nicholas V*, 628 F.2d 308, 315 (5th Cir.1980), *cert. denied, sub nom. Valmus Brothers Shipping, S.A. v. Fisher*, 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981). The Court may consider dismissing on grounds of *forum non conveniens* only after it determines that foreign law applies. *Id.*

■■■ To determine whether American or foreign law applies, the Court must refer to the choice of law factors enunciated by the Supreme Court in *Lauritzen v. Larson*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) and *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). Those factors are: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured party;[1] (4) the allegiance of the shipowner; (5) the place of contract; (6) the accessibility of the foreign forum; (7) the law of the forum; and (8) the base of the shipowner's operations. In applying these factors, the Court does not merely add up

---

1. Pratt argues that his present residence, and not his original nationality, is the controlling factor in the choice of law analysis. This is because under the Sierra Leonian compensation scheme, he claims he is entitled only to fifteen weeks worth of pay. After receiving this sum, he will return to America and become a financial charge of the state. Thus, the United States has an intense interest in applying the Jones Act to this dispute, namely, to protect the fisc. This argument leads to absurd consequences. If it were accepted, *any* injured seaman from *any* country whose personal injury benefits are appreciably less than those of the U.S. could, by taking up post-injury residence in the U.S., confer Jones jurisdiction on American courts. Certainly, Congress did not intend to achieve this result by enacting the Jones Act, and the Court declines the plaintiff's invitation to do otherwise.

the scores for and against, as the test is neither arithmetic nor mechanical. *DeOliveira v. Delta Marine Drilling Co.*, 707 F.2d 843, 845 (5th Cir.1983). If the liberal purposes of the Jones Act are to be effectuated, "the facade of the operation must be considered as minor, compared with the real nature of the operation and ... the actual operational contacts that the ship and the owner have with the United States." *Rhoditis*, 398 U.S. at 310, 90 S.Ct. at 1734–35.

■ In this case, it is undisputed that: (1) the place of the wrongful act was aboard the M/V ARAFAT, in the Persian Gulf; (2) the law of the flag is Kuwait; (3) the allegiance of the injured party is Sierra Leone; (4) the allegiance of the shipowner is Kuwait; (5) the place of contract is Sierra Leone; (6) both Sierra Leonian and Kuwaiti courts are available; and (7) the law of the forum is inapplicable where the defendant is involuntarily made a party. *Lauritzen*, 345 U.S. at 591–92, 73 S.Ct. at 933; *Diaz v. Humboldt*, 722 F.2d 1216, 1218 (5th Cir.1984). The only genuinely disputed choice of law factor is the shipowner's base of operations.

■ The contracts necessary to create an American base of operations must be substantial. *Fisher*, 628 F.2d at 317. Indeed, the foreign owner must be engaged in an "extensive business operation" in this country. *Rhoditis*, 398 U.S. at 310, 90 S.Ct. at 1734. As the Fifth Circuit previously has stated, "[W]e do not, of course, intimate that doing *any* amount of business in a U.S. port, however minor, is alone sufficient to establish a 'substantial base of operations'." *Fisher*, 628 F.2d at 317 n. 17 (emphasis in original).

An important consideration for determining the base of operations is the place at which day-to-day operating activities are conducted. *Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015, 1019 (5th Cir.1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). United Arab maintains no office or representative in the United States and manages the daily operations of its vessel from its offices in Kuwait and England. While United Arab uses Kerr Steamship Company as its husbanding agent in New Orleans, the mere use of such agents or brokers who contract in American ports for the use of the ship's services does not establish an American base of operations. *Merren v. A/S Borgestad*, 519 F.2d 82, 83 (5th Cir.1975). If the use of an American agent required the application of American law, "virtually all foreign shipowners whose vessels sail to and from American ports would find themselves subject to the nation's maritime tort laws." *Cruz v. Maritime Co. of Philippines*, 549 F.Supp. 285, 289 (S.D.N.Y.1982), *aff'd*, 702 F.2d 47 (2d Cir.1983).

■ Nor does the fact that United Arab vessels have made calls upon U.S. ports indicate an American base of operations. That a vessel periodically visits this country is insufficient, in itself, to establish such a base. *Volyrakis v. M/V Isabelle*, 668 F.2d 863, 868 (5th Cir.1982). Finally, the amount of income that United Arab earned from visits of its vessels to the United States is likewise insufficient to establish an American base of operations. United Arab earned $330,000,000 from such visits over the last five years, which represents only 14 percent of its total earnings for the same period, which were $2,500,000,000. Such a sum hardly indicates an American base of operations.

■ The Court therefore finds, by application of the pertinent choice of law factors, that foreign law applies. Accordingly, the Court has discretion to dismiss. The next question is whether, under the doctrine *forum non conveniens*, it should exercise that discretion.

■ The *forum non conveniens* analysis is predicated upon a finding that there exists an available and adequate alternative forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 265 n. 22, 70 L.Ed.2d 419 (1981). That requirement ordinarily is satisfied where the defendant is amenable to process in the other forum. *Gilbert*, 330 U.S. at 506–507, 67 S.Ct. at 842. "In rare circumstances,

however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied ... where, (for example,) the alternative forum does not permit litigation of the subject matter in dispute." *Piper*, 102 S.Ct. at 265 n. 22. However, the possibility of an unfavorable change in the applicable law normally is not a relevant consideration in the *forum non conveniens* inquiry. *Id.* 102 S.Ct. at 261. The Court will presume that the substantive law of the foreign forum is adequate unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum otherwise made known to the Court plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice therein. *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 393–94 (5th Cir.1983).

■ United Arab has indicated that it will submit to *in personam* jurisdiction in either Kuwait or Sierra Leone. Thus, there are available alternative forums to the Eastern District of Louisiana. Further, the alternative forums are adequate within the meaning of *Piper* and *Vaz Borralho*. United Arab submitted affidavits demonstrating that both Kuwait and Sierra Leone provide compensation to seamen injured in the course of their employment. These remedies are presumptively adequate. Pratt baldly asserts that "from his experience," he will not receive what he is entitled to under Sierra Leonian law. Such an assertion is insufficient to overcome the presumption of adequacy of the foreign forum. Accordingly, there are adequate alternative forums in which Pratt may press his claims.

■ The Court must then consider the following factors in conducting the *forum non conveniens* inquiry: (1) the private interests of the litigants; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process; (4) the cost of obtaining the attendance of willing witnesses; (5) practical considerations that make trial of a case easy, expeditious and inexpensive; and (6) factors of public inter-

est, such as congested dockets and the undesirability of imposing jury duty upon members of a community unrelated to the litigation. *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843. However, unless the balance of convenience strongly favors the defendant, the plaintiff's choice of forum should rarely be disturbed. *Id.* The Court must assume that it will exercise jurisdiction unless the defendant establishes that an injustice would follow. *Chiazor v. Transworld Drilling Co., Ltd.*, 648 F.2d 1015, 1019 (5th Cir.1981).

■ The private interests of the litigants favor neither party. Pratt has been living in New Orleans since July 1980, and has been married to an American citizen since August 1981. United Arab is a Kuwaiti corporation with its base of operations in Safat, Kuwait. United Arab would incur at least as much expense and inconvenience by defending this suit in the United States as would plaintiff by prosecuting it abroad. This factor is inconclusive to the analysis.

However, the sources of proof are relatively more accessible to the foreign forums than to the United States. The only known witness to the accident, Edward Duncan, is a Sierra Leonian citizen. The other crew members of the ARAFAT likewise are citizens of Sierra Leone. The documents concerning Pratt's service aboard the ARAFAT are kept in the operations office of United Arab in Safat, Kuwait. The medical records from Pratt's hospital stay are located in Kuwait and Sierra Leone, respectively. Only Pratt's present physician resides in the United States. Thus, this factor favors dismissal.

The persons most familiar with the condition of the ARAFAT at the time of the accident and the only potential witnesses to the accident are foreign seamen. Should these seamen refuse to attend, process could not compel their presence at trial. Their absence effectively would preclude United Arab from mounting a viable defense to Pratt's claim and would deprive the fact-finder of an essential source of information. Should the key witnesses

choose to attend, the cost of obtaining their attendance would be astronomical. Thus, both the unavailability of compulsory process to ensure the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses favor dismissal.

Several practical problems would make trial in this matter difficult, tedious and expensive. The testimony of most, if not all, of the foreign witnesses, whether elicited at trial or through depositions, would require translation into English. Further, since foreign law applies in this case, expert testimony would be needed to determine the content of Kuwaiti or Sierra Leonian law and to translate it into English. This process is not only expensive and time-consuming, but greatly increases the risk of error.

Finally, the public has little interest in seeing Pratt's case tried in this forum. No statistics need to be cited to show that the Eastern District of Louisiana has one of the busiest trial dockets in the country. Nor does this case have a local connection that justifies the imposition of jury duty upon members of this community.

The Court therefore finds, by application of the above factors, that the Eastern District of Louisiana is an inconvenient forum in which to try Pratt's case. Accordingly, the motion of United Arab to dismiss on grounds of *forum non conveniens* is hereby GRANTED subject to the following conditions: that United Arab submit to service of process and jurisdiction in the appropriate Kuwaiti or Sierra Leonian court in which Pratt shall have filed suit within ninety (90) days of dismissal; that in the Kuwaiti or Sierra Leonian proceeding, United Arab formally waive any statute of limitations defense that has matured since the commencement of this action in the Eastern District of Louisiana; that in the Kuwaiti or Sierra Leonian court, United Arab formally agree to make available therein all relevant witnesses and documents within its control; that in the Kuwaiti or Sierra Leonian proceedings, United Arab formally agree to satisfy any final

judgment rendered by that court; and that should United Arab fail to promptly meet any of these conditions, the Court shall resume jurisdiction over this case.