BRUCE WOLF, as *Personal Representative, Appellant,* v.
THE BOEING COMPANY, ET AL, *Respondents.*

*George Kargianis, Philip Arnold,* and *Kargianis, Austin & Osborn,* for appellant.

*Richard C. Coyle, Keith Gerrard,* and *Perkins Coie; Tamara Jill Conrad,* for respondent Boeing Company.

*David D. Swartling* and *Karr Tuttle Campbell,* for respondent B.F. Goodrich Company.

*G. Val Tollefson* and *Danielson, Harrigan & Tollefson (Jonathan S. Morris,* of counsel), for respondents Goodyear Tire and Rubber Company, et al.

SCHOLFIELD, J.—Bruce Wolf, as personal representative and special administrator for the estates and survivors of David Chavez, et al., brought this suit against the Boeing Company on behalf of the survivors of passengers killed in the crash of a Boeing 727 in Mexico. Following the trial court's dismissal of his action on the grounds of forum non conveniens, Wolf appeals. We affirm.

## FACTS

On March 31, 1986, a Boeing 727 (B–727) operated by Mexicana Airlines (Mexicana) crashed in a mountainous region of Mexico while en route from Mexico City to Puerto Vallarta, Mexico. All 167 passengers and crew were killed in the accident, making it the worst aviation disaster in Mexican history.

The accident was investigated by the Direccion General de Aeronautica Civil (DGAC), a Mexican governmental agency with headquarters in Mexico City.[1] At the request of DGAC, Boeing employees assisted in the investigation of the accident, examining pieces of the aircraft found in its flight path and at the crash site. The aircraft pieces were later returned to the DGAC.

The investigation revealed that the brake of the outboard wheel on the left main landing gear had fused internally. This fusion indicated that the brake and wheel assembly had been exposed to extreme heat, such as that which would occur if hydraulic pressure had been applied to the brake, causing the brake to "drag" while the aircraft taxied and took off. This "brake drag" was believed to have been caused by an internal leak in a hydraulic unit, or "deboost valve". Maintenance records indicated that the hydraulic unit had been installed on the aircraft after its overhaul in Mexico. Mexicana had also been filling its aircraft tires with dry air, contrary to Boeing recommendations to use nitrogen due to safety concerns. The crash was determined

---

[1]United States government involvement in the investigation was limited. National Transportation Safety Board (NTSB) investigators visited the scene, but issued no reports.

to have been caused by a tire explosion on the landing gear that broke fuel and hydraulic lines, causing a fire that weakened the fuselage and ultimately resulted in the loss of the tail section of the airplane.

The B–727 aircraft involved in this accident was designed, manufactured, tested, inspected, sold and delivered by defendant Boeing within the state of Washington. The Boeing Company is incorporated in the state of Delaware and has its principal place of business in Washington state. In addition to Boeing, five other defendants are named in this suit.[2] For simplicity, the collective defendants will be referred to simply as "Boeing".

In November 1989, Wolf[3] brought this suit in the Superior Court of Washington for King County, seeking damages from Boeing for wrongful death and personal injuries as a result of the crash.[4] Wolf subsequently moved for partial summary judgment declaring Washington to be a convenient forum for trial, and Boeing responded with a motion to dismiss on grounds of forum non conveniens. By letter dated December 19, 1989, the trial judge informed the parties of his ruling to dismiss the action on grounds of

---

[2]Those defendants are the B.F. Goodrich Company, a New Jersey corporation registered to do business in Washington; the Goodyear Tire and Rubber Company, an Ohio corporation registered to do business in Washington; Goodyear Aerospace Corporation, a foreign corporation; Delta Airlines, Inc., a Delaware corporation registered to do business in Washington, and Parker–Hannifin Corporation, an Ohio corporation registered to do business in Washington.

[3]Wolf is the representative and administrator for the estates and survivors of David Chavez, et al.

[4]There have been four prior lawsuits brought in the United States due to this accident. For a brief history of these actions, see Compania Mexicana de Aviacion, S.A. v. United States Dist. Court, 859 F.2d 1354, 1357 n.2 (9th Cir. 1988). The Compania Mexicana suit was dismissed on grounds of Mexicana's sovereign immunity. 859 F.2d at 1360. Two of the other actions were dismissed on the grounds of forum non conveniens. See Diaz v. Mexicana de Avion, S.A., 20 Av. Cas. (CCH) 17,983 (W.D. Tex. 1987); Garcia v. Mexicana de Avion, No. 87 C3920 (N.D. Ill. 1987) (adopting reasoning of Diaz and dismissing suit against Mexicana, Boeing, and Delta Airlines due to forum non conveniens). The fourth action was voluntarily dismissed. See Compania Mexicana de Aviacion, at 1357 n.2.

forum non conveniens as Mexico was the proper forum for this action. After Wolf's motion for reconsideration was denied, he presented a proposed judgment of dismissal on grounds of forum non conveniens to the court. Following limited modifications, the judgment was entered. The judgment of dismissal required Boeing to submit to jurisdiction in the proper Mexican forum and to waive, for a period of 120 days, any mature statute of limitations defense available under Mexican law. Boeing was also required to make available to Wolf in the Mexican proceeding all witnesses under its control.

This appeal timely followed.

## FORUM NON CONVENIENS

■ Under the doctrine of forum non conveniens, courts have discretionary power to "'[decline] jurisdiction where, in the court's view, the difficulties of litigation militate for the dismissal of the action subject to a stipulation that the defendant submit to jurisdiction in a more convenient forum.'" *Myers v. Boeing Co.,* 115 Wn.2d 123, 128, 794 P.2d 1272 (1990) (quoting *Werner v. Werner,* 84 Wn.2d 360, 370, 526 P.2d 370 (1974)). The standard of review for a dismissal on grounds of forum non conveniens is abuse of discretion. *Myers,* at 128. Such an abuse occurs if the dismissal is "'manifestly unfair, unreasonable or untenable.'" *Myers,* at 128 (quoting *General Tel. Co. of Northwest, Inc. v. Utilities & Transp. Comm'n,* 104 Wn.2d 460, 474, 706 P.2d 625 (1985)).

■ The doctrine presupposes that there are at least two forums in which the defendant is amenable to process. *Myers,* at 128. The United States Supreme Court set out several criteria for choosing the proper forum in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947). Our Supreme Court adopted the *Gulf Oil* factors in *Johnson v. Spider Staging Corp.,* 87 Wn.2d 577, 555 P.2d 997 (1976). *See Myers,* at 128. Given the discretionary nature of the forum non conveniens doctrine, the private and public interest factors set out in *Gulf Oil* are not bright

line rules; rather, they constitute a series of considerations to be evaluated and balanced. *See Myers,* at 128. Unless the factors weigh strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *Myers,* at 128–29 (quoting *Gulf Oil,* at 508).

The court in *Myers* listed the private interests as follows:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Myers,* at 128 (quoting *Gulf Oil,* at 508). The public interest factors listed by the court in *Myers* are as follows:

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Myers,* at 129 (quoting *Gulf Oil,* at 508–09).

The trial court in this case found that an adequate alternative forum existed in Mexico. The court relied on *Spider Staging* and *Gulf Oil* in balancing the public and private interest factors inherent in the forum non conveniens decision. Among the private interest factors considered by the court were the following:

> (a) all plaintiffs are residents of Mexico; (b) the crash occurred in Mexico; (c) the crash investigation was in Mexico by an agency of the Mexican government; (d) substantially all witnesses to the crash and the aftermath are in Mexico; (e) the allegedly defective parts are in Mexico; (f) the aircraft in question belonged to Mexicana Airlines, an airline owned in part by the Mexican government; (g) maintenance and other records concerning the subject aircraft are also in the possession of

Mexicana; (h) all evidence regarding damages is in Mexico; (i) there would be substantial expense and difficulty in compelling attendance of non–party witnesses from Mexico; (j) the present defendants are residents of the United States; and (k) the aircraft and parts in question were manufactured here.

Finding of fact 5. The court also considered the following public interest factors:

(a) the courts in King County are seriously congested; (b) there would be serious conflict of law problems; (c) Mexicana is not subject to jurisdiction in Washington; and (d) Washington has an interest in allowing unlimited damages as a means of deterring manufacture of defective products.

Finding of fact 6. After balancing the above factors, the trial court determined that the factors considered weighed heavily in favor of trial of the action in Mexico.

Wolf has assigned error to several of the trial court's findings.[5] He argues that the trial court erroneously concluded that an adequate alternative forum existed in Mexico. Wolf also contends that the trial court improperly weighed the public and private interest factors pursuant to *Spider Staging* and *Gulf Oil*. More specifically, Wolf contends that the court failed to give sufficient consideration to strong state and federal policies of deterrence, while giving too much emphasis to the existence of undisputed crash

---

[5]Boeing contends that Wolf has failed to adequately assign error to the trial court findings he challenges in this appeal, particularly the finding that Mexico provides an adequate alternative forum for this action. Under RAP 10.3(g), a separate assignment of error for each challenged finding is required, and each assignment must also include reference to the finding by number. The purpose of the rule is to add order and expedite appellate procedure by eliminating the laborious task of searching through the record for such matters as findings claimed to have been made in error. *In re Marriage of Stern,* 57 Wn. App. 707, 710, 789 P.2d 807, *review denied,* 115 Wn.2d 1013 (1990). Wolf did not set forth verbatim findings and conclusions in his opening brief, but cured this defect in his reply brief, thus eliminating any potential inconvenience to this court. *See Stern,* at 710. Furthermore, the thrust of Wolf's overall position in his opening brief made clear his challenge to the finding of an adequate alternative forum in Mexico, thus mitigating any prejudice to Boeing. A technical violation of the rules will not ordinarily bar appellate review where justice is to be served by such review. *Daughtry v. Jet Aeration Co.,* 91 Wn.2d 704, 710, 592 P.2d 631 (1979) (construing RAP 1.2(a)). In the exercise of our discretion pursuant to RAP 1.2(b) and RAP 18.9, we will consider the appeal on the merits. *See Stern,* at 710.

evidence in Mexico. Wolf further argues that the trial court failed to address the choice of law issue and that it improperly cited court congestion as a factor in support of dismissal. Finally, Wolf contests the 120–day limit for filing this action in a Mexican forum.

1. Adequacy of Mexican Forum.

■ The substantive law of a foreign forum is presumed adequate unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum, otherwise known to the court, plainly demonstrate that the plaintiffs are highly unlikely to obtain basic justice therein. *See Pratt v. United Arab Shipping Co.*, 585 F. Supp. 1573 (E.D. La. 1984). In the present case, Wolf's argument as to the inadequacy of the Mexican forum is based largely, if not exclusively, on his contention that Mexico limits recoverable damages to approximately $10,000.

We initially note several factors that cause us to question the $10,000 figure provided by Wolf. Under Mexican law, recovery for the death of another is calculated by "tak[ing] as the base four times the minimum daily salary which is the highest in force in the region and . . . multipl[ying] [it] by the number of days indicated in the Federal Labor Law for each of the incapacities mentioned." Civil Code of Mexico ch. 5, art. 1915. The calculation of recoverable damages under this formula, in United States dollars, depends on factors such as the minimum daily salary used, the number of days used as the multiplier, and the exchange rate of peso to dollar. There is no evidence in the record as to how Wolf derived the daily multiplier of 730, and the exchange rate he uses is assumed. Furthermore, the minimum daily salary figure used by Wolf is from the year 1987, and that figure has increased considerably since that time.[6]

---

[6]To arrive at the $10,000 recovery figure, Wolf used the 1987 minimum daily salary of 6,600 pesos per day, quadrupled it to reach a figure of 26,400 pesos, and multiplied that figure by 730 days to arrive at a total of 19,272,000 pesos. Wolf then assumed an exchange rate of 2,000 pesos per United States dollar to arrive at

Even if we accepted Wolf's contention that recovery would be limited to $10,000 per plaintiff in a Mexican forum, that factor alone does not render the forum inadequate.[7] The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry, *see Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 247, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981), *reh'g denied,* 455 U.S. 928 (1982),[8] and the prospect of a lesser recovery does not justify refusing to dismiss on the grounds of forum non conveniens. *See Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147, 159 (2d Cir. 1978) (dismissal on forum non conveniens upheld despite $570,000 limit on recovery in Trinidad forum, as opposed to $8 million in United States forum). Only where the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all should an unfavorable change in law be given substantial weight. *Piper Aircraft,* at 254. The remedies available under Mexican law do not fall within this category, and we

---

a figure of $9,636 in United States currency, which was apparently rounded up to $10,000.

In the period 1987 to 1989, Wolf's affiant acknowledges that the minimum daily wage rate relevant here more than doubled, from 6,600 to 13,560 pesos per day. That figure is likely to be even higher now. Furthermore, there is no evidence in the record as to the origin of the 730-day multiplier, or as to the validity of the exchange rate used. In any event, the evidence suggests that if recovery were based on a formula using present day figures, the potential judgment could be considerably higher than what Wolf suggests.

[7]We do not believe that a $10,000 recovery is inadequate by Mexican standards. Using Wolf's figures of 6,600 pesos per day and an exchange rate of 2,000 pesos per dollar, the representative Mexican worker would earn approximately $3.30 per day in United States currency. Assuming an average working year of 260 days (52 weeks times 5 days per week), the worker could expect to earn $858 per year. A damage award of $10,000 would thus be the equivalent of approximately 11.6 years of annual earnings.

[8]Although Wolf contends that the *Myers* court rejected the reasoning of *Piper Aircraft,* we read the *Myers* decision as declining to follow on a limited portion of the *Piper Aircraft* opinion. That portion dealt with the "lesser deference" standard applicable to a plaintiff's choice of forum when that plaintiff is a foreigner. *Myers,* at 135–38.

therefore find no error in the trial court's conclusion that the courts of Mexico provide an adequate alternative forum for this action.[9]

2. Washington's Interest in Deterrence.

Wolf next argues that the trial court gave insufficient weight to Washington's interest in deterring the manufacture of defective products in this state. The trial court, however, specifically recognized Washington's interest in allowing unlimited damages as a means of deterring manufacture of defective products. It also recognized that the defendants were United States residents and that the aircraft parts in question were manufactured in this state. In its discretion, the trial court concluded that greater weight should be given to the fact that virtually all crash evidence was located in Mexico, that the courts of this state were seriously congested, that there were conflict of law problems, and that Mexicana was not subject to jurisdiction in Washington.

█ In any event, we do not believe the trial court was required to consider the policy of deterrence as a factor in conducting its forum non conveniens analysis. *See Myers v. Boeing Co.,* 115 Wn.2d 123, 135, 794 P.2d 1272 (1990). As noted by the court in *Myers,* Washington adopted the *Gulf Oil* factors in *Johnson v. Spider Staging Corp.,* 87 Wn.2d 577, 555 P.2d 997 (1976), and the court there made no mention of deterrence as an overriding State's interest in its forum non conveniens analysis. *Myers,* at 135. The factor of deterrence was addressed by the *Spider Staging* court only in its choice of law analysis, which it conducted after it determined Washington to be a proper forum. *See Spider Staging,* at 580–84. Wolf cannot complain that the trial court gave insufficient consideration to a factor that it was not required to consider.

---

[9]The first court to hear this action reached a similar result, concluding that "[t]here is certainly no indication that the remedy provided by the Mexican forum would be so clearly inadequate or unsatisfactory that it would be no remedy at all." *Diaz v. Mexicana de Avion, S.A.,* 20 Av. Cas. (CCH) 17,983, 17,983-3 (W.D. Tex. 1987).

### 3. Location of Evidence in Mexico.

Wolf also contends that the trial court gave too great an emphasis to the crash evidence located in Mexico. He argues that in this product liability lawsuit, the crash sequence and scenario are admitted and thus not in dispute, rendering the evidence located in Mexico superfluous. What is in dispute, Wolf contends, is evidence as to aircraft crashworthiness and design, and that evidence is located in Washington. Wolf also asserts that the trial court erroneously considered Washington's lack of jurisdiction over Mexicana as a public interest factor in favor of dismissal.

The fact that evidence located in Mexico may be of little importance to Wolf does not mean that such evidence is unimportant to Boeing. Virtually all of the evidence relating to the maintenance of the aircraft, its operational history, its crash, and the subsequent investigation are in Mexico. Also in Mexico are all witnesses, airplane parts, and evidence as to damages. Contrary to Wolf's contentions, Boeing vigorously contests liability and causation in this action. Boeing contends that Mexicana must bear sole responsibility for this accident on the basis of two events: (1) the improper overhaul of the deboost valve,[10] and (2) the failure to follow Boeing's recommendation to inflate tires with nitrogen. If Boeing can establish that the accident was caused by the actions of Mexicana rather than by a design defect, it would be relieved of all liability. Boeing's ability to establish such a defense depends upon access to the considerable amount of evidence in Mexico.

Although Mexicana is not a party to this action and may not be subject to suit in Mexico,[11] the trial court did not err in considering Washington's lack of jurisdiction over Mexicana as a factor favoring dismissal. Without jurisdiction, the courts of Washington are without power to compel

---

[10]The deboost valve, manufactured by defendant Parker–Hannifin, was overhauled in Mexico prior to the crash.

[11]Wolf contends that the 2–year statute of limitations for bringing suit against Mexicana under Mexican law has expired.

the production of evidence within Mexicana's control or to procure the attendance of unwilling Mexican witnesses. It is proper for the trial court to consider these difficulties in conducting its forum non conveniens analysis. *See Myers,* at 128.

Furthermore, as a condition of the dismissal of this action, the trial court required Boeing to make all witnesses under its control available for any Mexican proceeding. Wolf will thus have access to the same evidence and witnesses in Mexico as would be available here, and Boeing will also gain access to necessary evidence and witnesses.

4. Choice of Laws.

Wolf contends that the trial court abused its discretion in failing to reach the choice of law issue. He contends that because Washington seeks to deter certain conduct through the availability of unlimited damages, it has a greater interest in the application of its own law than does Mexico, which limits damage recoveries.

Wolf relies on *Werner v. Werner,* 84 Wn.2d 360, 526 P.2d 370 (1974) in arguing that choice of law issues are a component of the forum non conveniens analysis. *Werner* involved a question of Washington long–arm jurisdiction over nonresident defendants, and was the first Washington decision to explicitly recognize the forum non conveniens doctrine. *Werner,* at 364–67, 371. After determining that Washington had jurisdiction over the nonresident defendants and that California law controlled their liability, the court in *Werner* expressly adopted the forum non conveniens doctrine and remanded the case to the trial court for a determination of whether dismissal would be proper. *Werner,* at 367–71.

We do not read *Werner* as imposing a requirement that conflict of law issues be included in the forum non conveniens analysis. This is made clear by the court's subsequent decision in *Johnson v. Spider Staging Corp., supra,* where the court adopted the *Gulf Oil* factors as the standard to be used in forum non conveniens decisions. *Spider Staging,* at 579. The court in *Spider Staging* clearly

separated the forum non conveniens analysis from the choice of law issues, and that approach was recently approved by the court in *Myers v. Boeing Co., supra:*

> First, while the State's interest in deterring wrongful conduct by Washington manufacturers weighed heavily in the court's resolution of *Spider Staging,* the State's interest in deterrence was factored into the court's *choice of law analysis,* not the forum non conveniens motion, and then only after the court found the contacts of the parties with Kansas and Washington to be evenly balanced.
>
> Second, and more importantly, *Spider Staging* did not reach the choice of law issue until the forum non conveniens issue was resolved because if the court found that Kansas was the proper forum, Kansas would determine the applicable law. In resolving the forum non conveniens issue, the court expressly adopted the *Gulf Oil* factors. There was no mention of deterrence as an overriding State's interest in the forum non conveniens analysis.

(Citations omitted.) *Myers,* at 135. Neither *Spider Staging* nor *Myers* requires the trial court to address choice of law questions as a part of the forum non conveniens analysis. The trial court here did not abuse its discretion in failing to do so.

5. Court Congestion, Witness Availability, and 120–Day Appeal Period.

■ The trial court considered court congestion in King County as a factor in its forum non conveniens decision. This was entirely appropriate, as administrative difficulties and court congestion have been recognized as legitimate public interest factors since the *Gulf Oil* decision. *See Myers,* at 129 (quoting *Gulf Oil,* at 508–09). Wolf's reliance on *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325 (9th Cir. 1984), *cert. denied,* 471 U.S. 1066 (1985) for a contrary proposition is misplaced. The *Gates* opinion does not state that court congestion *cannot* be considered; it merely indicates that congestion is a factor that should not weigh too heavily in the forum non conveniens decision. *Gates,* at 1337. Like the other factors, it is entitled to some, but not decisive, weight in transfer motions. *See Gates,* at 1337 (citing *Foster v. Litton Indus., Inc.,* 431 F. Supp. 86, 88

(S.D.N.Y. 1977)). Wolf has not shown that the trial court gave undue emphasis to the factor of court congestion.

Wolf next argues that the trial court erred in considering only the difficulties Boeing would face in compelling the attendance of nonparty witnesses from Mexico, while failing to consider the reciprocal problem Wolf would face in compelling the attendance of Boeing engineers and designers in a Mexican forum. Again, the court did consider this problem and resolved it by requiring Boeing to make available to Wolf all witnesses under its control in any Mexican proceeding. Although Wolf may disagree with the court's evaluation of the relative advantages and disadvantages of each forum, he has not shown that the court abused its discretion in failing to consider these issues.[12]

Finally, Wolf argues that the trial court erred by requiring that any Mexican action be filed within 120 days of the order of dismissal. He contends that his right of appeal is prejudiced because the limitation mandates the filing of the Mexican action while this appeal is still pending.

■ Boeing contends that Wolf has waived any objection to the 120–day appeal period, and we are inclined to agree. Wolf drafted the dismissal order and presented it to the court. Although he indicated his approval "as to form only", nothing in the record indicates that Wolf ever made a specific objection to the 120–day period before the trial court. Wolf made no effort to stay this term of the judgment pending appeal.[13] However, even if there was no waiver, there was no error in the imposition of the 120–day limit. Conditions imposed by the order of dismissal are within the sound discretion of the trial court. *See Gonzalez*

---

[12]An important consideration here is the trial court's authority to secure evidence and compel attendance of witnesses. Were the trial held in Washington, the court would have no power to compel the presence of a considerable number of Mexican witnesses and accompanying evidence. Boeing contends that the evidence located in Mexico is crucial to its defense. On the other hand, the court could compel witnesses and evidence under Boeing's control to be made available to Wolf in a Mexican proceeding.

[13]*See* RAP 8.1(b)(3).

*v. Naviera Neptuno A.A.,* 832 F.2d 876, 881 n.6 (5th Cir. 1987). The *Gonzalez* court conditioned a forum non conveniens dismissal on the plaintiff's filing suit in a Peruvian forum within 90 days. *Gonzalez,* at 882. The present dismissal order requires suit to be filed in Mexico within 120 days, and Wolf has not shown this time limit to be unreasonable.

Judgment affirmed.

BAKER and KENNEDY, JJ., concur.

[No. 23628-8-I.   Division One.   May 20, 1991.]