156 P.3d 303 (2007)
Charles SALES and Patricia Sales, a married couple, Appellants,
v.
WEYERHAEUSER COMPANY, a Washington corporation, Respondents.
No. 35247-8-II.
Court of Appeals of Washington, Division 2.
April 24, 2007.
*304 Matthew Phineas Bergman, David S. Frockt, Bergman & Frockt PLLC, Brian F. Ladenburg, Bergman & Frockt, P.S., John Wentworth Phillips, John Matthew Geyman, Phillips Law Group PLLC, Seattle, WA, for Appellants.
Elizabeth Pike Martin, Gordon Thomas Honeywell et al, Tacoma, WA, Diane J. Kero, Gordon Thomas Honeywell, Seattle, WA, for Respondents.

PUBLISHED OPINION
ARMSTRONG, P.J.
¶ 1 Charles Sales's father worked with asbestos-containing materials at a Weyerhaeuser Company (Weyerhaeuser) mill in Arkansas during Sales's childhood. After doctors diagnosed Sales, an Arkansas resident, with mesothelioma, he filed a personal injury action in Pierce County, Washington against Weyerhaeuser Company, alleging that his father brought home asbestos dust on his clothing that exposed Sales to the asbestos and caused him to develop mesothelioma. On Weyerhaeuser's motion to dismiss for an inconvenient forum, the trial court dismissed this action, ruling that Sales should have filed the action in Arkansas. Sales presented evidence that if he filed the case in Arkansas, Weyerhaeuser would likely remove the case to federal court, where it would be transferred to the asbestos Multi-District Litigation in the Eastern District of Pennsylvania, a venue that could significantly delay Sales's trial. Because Sales's condition is terminal, any significant delay could deprive him of his day in court. Although the trial court considered the possible delay, it believed it could not speculate whether Weyerhaeuser would transfer the case to federal court. The trial court also apparently believed that it could not require Weyerhaeuser to stipulate to trying the case in Arkansas state court. We reverse and remand for the trial court to dismiss the case on the condition that Weyerhaeuser stipulate to allowing the case to continue in Arkansas state court.

FACTS
¶ 2 Weyerhaeuser is a Washington corporation. During the relevant time, Weyerhaeuser owned and operated a mill in Mountain Pine, Arkansas. Charles Sales's father worked at the Mountain Pine mill from 1984 *305 until 1992. Sales was born in 1984 and lived with his father during the eight years his father worked at the mill.
¶ 3 After doctors diagnosed Sales with mesothelioma, he filed a personal injury action in Pierce County against Weyerhaeuser. The complaint alleged that Sales's father's job exposed him to asbestos dust, which he brought home on his clothing, and thereby exposed Sales to the asbestos and caused his mesothelioma.
¶ 4 Weyerhaeuser moved to dismiss on the theory that Arkansas, and not Washington, is the proper forum because Sales and a number of witnesses live there, and the injury occurred there.
¶ 5 Sales claimed that Washington is the proper forum because several key witnesses live in Washington and because Weyerhaeuser is headquartered in Washington. Sales also argued that if he re-filed his lawsuit in Arkansas, Weyerhaeuser would likely remove the case to federal court, based on diversity jurisdiction, where it would be transferred to the asbestos Multi-District Litigation in the Eastern District of Pennsylvania. Sales argued that a trial in Pennsylvania would inconvenience all parties and that the practical effect of re-filing the claim in Arkansas would do nothing to address the convenience arguments Weyerhaeuser raised in its motion to dismiss.
¶ 6 The trial court dismissed the case, ruling that the trial should take place in Arkansas "since that is the state in which the alleged injuries took place and where [Sales] resides and is being treated." Clerk's Papers (CP) at 160. The court found that "[t]here is no real causal connection for this case to Washington . . . other than the fact that Weyerhaeuser's corporate headquarters [are] located here." CP at 160. With respect to Sales's argument that Weyerhaeuser sought dismissal so that it could remove the case to federal court, the court said that the interests of justice required the case to proceed before an Arkansas court. Nonetheless, it stated that it could not "speculate on whether . . . this case would be removed . . . or [regarding] the status . . . of [asbestos] case[s]" in the federal system.[1] CP at 161.
¶ 7 Sales moved the trial court to reconsider, arguing that it misused the inconvenient forum doctrine and essentially provided Weyerhaeuser with a "back[ ]door" into federal court. CP at 187. Alternatively, Sales argued that the court should have conditioned dismissal on Weyerhaeuser's stipulation to try the case in Arkansas state court. The trial court denied Sales's motion for reconsideration.
¶ 8 The principal issue on appeal is whether the trial court erred in dismissing the action without requiring Weyerhaeuser, as a condition of the dismissal, to stipulate to trying the case in Arkansas state court. We hold that the trial court erred in not conditioning the dismissal.

ANALYSIS

I. STANDARD OF REVIEW
¶ 9 Trial courts have discretionary power to decline jurisdiction when resolving the action in another forum would better serve the parties' convenience and the ends of justice. Johnson v. Spider Staging Corp., 87 Wash.2d 577, 579, 555 P.2d 997 (1976) (citing Werner v. Werner, 84 Wash.2d 360, 370, 526 P.2d 370 (1974)). We review a dismissal based on inconvenient forum for an abuse of discretion. Myers v. Boeing Co., 115 Wash.2d 123, 128, 794 P.2d 1272 (1990). A court abuses its discretion in dismissing a case due to an inconvenient forum if the dismissal is "`manifestly unfair, unreasonable[,] or untenable.'" Myers, 115 Wash.2d at 128, 794 P.2d 1272 (quoting Gen. Tel. Co. v. Utils. & Transp. Comm'n, 104 Wash.2d 460, 474, 706 P.2d 625 (1985)).
¶ 10 Generally, the plaintiff gets to chose the forum. Hatley v. Saberhagen Holdings, Inc., 118 Wash.App. 485, 488, 76 P.3d 255 (2003) (quoting Baker v. Hilton, 64 Wash.2d 964, 965, 395 P.2d 486 (1964)). Although a plaintiff cannot choose an inconvenient forum merely to vex or harass a defendant, we will rarely disturb the plaintiff's *306 forum choice. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), superseded by statute, Former 28 U.S.C. § 1404(a) (1948).

II. EXISTENCE OF AN ADEQUATE ALTERNATIVE FORUM
¶ 11 To obtain a dismissal for inconvenient forum, Weyerhaeuser, as the party seeking dismissal, needed to show that Arkansas constituted an adequate alternative forum. Hill v. Jawanda Transp. Ltd., 96 Wash.App. 537, 541, 983 P.2d 666 (1999) (citing El-Fadl v. Cent. Bank of Jordan, 75 F.3d 668, 677 (D.C.Cir.1996)). An alternative forum is adequate so long as some relief, regardless how small, is available if the plaintiff prevails. Klotz v. Dehkhoda, 134 Wash.App. 261, 265, 141 P.3d 67 (2006) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).
¶ 12 Here, Weyerhaeuser did not argue below that Arkansas is an adequate alternative forum. Moreover, the trial court did not expressly find that Arkansas constituted an adequate alternative. Sales argues that because the court failed to expressly find that Weyerhaeuser satisfied the threshold burden of establishing an adequate alternate forum, we should reverse the trial court's dismissal.
¶ 13 An alternate forum is adequate as long as a plaintiff can litigate the essential subject matter in the alternate forum and recover if successful. See Piper, 454 U.S. at 254, 102 S.Ct. 252. Arkansas state courts recognize a tort action for damages caused by asbestos exposure. See, e.g., Deitsch v. Tillery, 309 Ark. 401, 833 S.W.2d 760 (1992) (plaintiffs sued a school district alleging negligence against the district and the school board and claiming that the school knew or should have known of the presence of asbestos in an elementary school and failed and refused to correct the condition).
¶ 14 Sales's counsel argued that "[a]ll [Weyerhaeuser had] to do is say, `We will allow the case to be heard in Arkansas,'" that "Weyerhaeuser repeatedly could have stipulated that they [would] allow the case to proceed to trial in Arkansas and they haven't done so," that "we've given Weyerhaeuser repeated opportunities to stipulate to allow the case to proceed to trial in Arkansas." Report of Proceedings (July 28, 2006) at 7-8. Thus, Sales's counsel conceded that Arkansas state court could provide an adequate forum.
¶ 15 Finally, the trial court found that Arkansas's state court system and trial date availability is "equal to, or comparable to, Pierce County." CP at 159; see Sablic v. Armada Shipping Aps, 973 F.Supp. 745, 748 (S.D.Tex.1997) (proposed alternative forum inadequate because a backlog of cases posed the possibility of a lengthy delay in the resolution of the plaintiff's case).
¶ 16 But Sales contends that Weyerhaeuser failed to prove that Arkansas is an adequate alternative forum because Weyerhaeuser did not establish that Arkansas would be the real forum. We agree and because the issue is so entwined with the trial court's power to condition a dismissal on Weyerhaeuser's stipulation to Arkansas as the more convenient forum, we discuss the two together below.

III. BALANCING CRITERIA FOR DETERMINING THE APPROPRIATE FORUM
¶ 17 In Gulf Oil, the United States Supreme Court set forth the criteria for determining an appropriate forum. Gulf Oil, 330 U.S. at 508, 67 S.Ct. 839. Washington adopted the Gulf Oil factors in Johnson v. Spider Staging Corp. Johnson, 87 Wash.2d at 579, 555 P.2d 997. In recognizing that the trial court has discretion to determine whether an alternate forum is more convenient, the Supreme Court has set out a list of private and public interest factors for courts to consider and balance. Myers, 115 Wash.2d at 128, 794 P.2d 1272.
¶ 18 Courts should consider the following private interests:
[1] the relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling [witnesses]; . . . [3] the cost of obtaining attendance of willing, witnesses; [4] possibility of view of premises, if view would be appropriate to the action; and [5] all other practical problems that make trial of a case easy, expeditious and inexpensive.
Myers, 115 Wash.2d at 128, 794 P.2d 1272 (quoting Gulf Oil, 330 U.S. at 508, 67 S.Ct. *307 839). Unless the balance of these private factors "is strongly in favor of the defendant," courts should rarely disturb the plaintiff's choice of forum. Gulf Oil, 330 U.S. at 508, 67 S.Ct. 839.
¶ 19 Courts should also consider the following public interest factors in determining an appropriate forum: (1) administrative difficulties in congested courts not at the origin of the litigation; (2) the burden of jury duty on a community that has no relation to the litigation; (3) the proximity between the trial's location and the people the case affects; (4) the interest in having local controversies decided locally; and (5) the desireability of trying the case in a jurisdiction familiar with the state law that governs the case. Myers, 115 Wash.2d at 129, 794 P.2d 1272 (quoting Gulf Oil, 330 U.S. at 508-09, 67 S.Ct. 839).
¶ 20 After balancing the Myers factors, the trial court granted Weyerhaeuser's motion to dismiss, stating that "[t]here is no question that many of the factors, both private and public, are either neutral or in favor of holding this trial in Arkansas." CP at 160. Indeed, the trial court determined that six of the ten factors favored an Arkansas trial and that the other four factors were neutral. The court did not conclude that a single factor favored a Washington trial.
¶ 21 The record supports the trial court's findings and its legal conclusion that Arkansas is a more appropriate forum for Sales's lawsuit. But this legal conclusion is meaningless if Weyerhaeuser removes the Arkansas state court action to federal court where it is then transferred to the Multi-District Litigation in Pennsylvania. We turn then to the question of whether the trial court had the power to enter a conditional dismissal and, if so, whether it abused its discretion in failing to do so.

IV. CONDITIONAL DISMISSAL ON INCONVENIENT FORUM GROUNDS
¶ 22 As previously stated, courts can decline jurisdiction when resolving the matter in another forum would better serve the parties' convenience and the ends of justice. Johnson, 87 Wash.2d at 579, 555 P.2d 997 (citing Werner, 84 Wash.2d at 370, 526 P.2d 370). Sales argues that the ends of justice will not be served if Weyerhaeuser removes the case to federal court because the case will end up in the federal asbestos Multi-District Litigation in the federal district court for the Eastern District of Pennsylvania.
¶ 23 Sales reasons that the trial court could have ensured a just result by conditioning dismissal on Weyerhaeuser's agreement to try the case in Arkansas state courts. He argues that the court erred in failing to acknowledge and exercise its legal authority to do so.
¶ 24 In dismissing Sales's case, the trial court voiced its concern that "the delays and inconvenience of handling this case through the system established by the [f]ederal [c]ourts in Pennsylvania[ ] would be a significant prejudice to [Sales]." CP at 161. It concluded that "it would be in the interest[ ] of justice to have this case tried in the county and location where the incident occurred, where the majority of the factual witnesses are located, and where [Sales] resides." CP at 161. Yet it believed that it could not "speculate on whether . . . this case would be removed to [f]ederal court . . . or [about] the status . . . of cases relating to this subject matter in the [f]ederal system." CP at 161. Moreover, it stated that it did not know of any law that would allow it to retain jurisdiction solely because of the potential delays if Weyerhaeuser removed the case to federal court.
¶ 25 A trial court has the discretion to decline jurisdiction where, in the court's view, "the difficulties of litigation militate for the dismissal of the action subject to a stipulation that the defendant submit to jurisdiction in a more convenient forum." Werner, 84 Wash.2d at 370, 526 P.2d 370 (citing RESTATEMENT (SECOND) CONFLICT OF LAWS § 84 (1971) and R. WEINTRAUB, COMMENTARY ON THE CONFLICT OF LAWS, ch. 8 at 154-60 (1971)). Thus, a trial court may condition dismissal on a defendant's stipulation that it will submit to jurisdiction in the defendant's proposed adequate alternative forum. See Wolf v. Boeing Co., 61 Wash.App. 316, 329-30, *308 810 P.2d 943 (1991) (the trial court has discretion to impose conditions in the order of dismissal for inconvenient forum) (citing Gonzalez v. Naviera Neptuno A.A., 832 F.2d 876, 881 n. 6 (5th Cir.1987)), overruled on other grounds by Hill, 96 Wash.App. at 541 n. 4, 983 P.2d 666; see, e.g., Werner, 84 Wash.2d at 371, 526 P.2d 370 (conditioning dismissal on stipulations that defendants submit to jurisdiction in California and not plead a lapse in the statute of limitations). Weyerhaeuser concedes that the trial court has discretion to condition dismissal on a defendant's stipulation that it will submit to jurisdiction in the defendant's proposed adequate alternative.
¶ 26 A court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law. Demelash v. Ross Stores, Inc., 105 Wash.App. 508, 530, 20 P.3d 447 (2001) (citing Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 339, 858 P.2d 1054 (1993)). The trial court failed to recognize that it had the authority to condition dismissal on Weyerhaeuser's stipulation to try the case in the Arkansas state court system.

V. FEDERAL COURT & THE MULTI-DISTRICT LITIGATION
¶ 27 On July 29, 1991, the judicial panel on Multi-District Litigation (MDL Panel) issued In re Asbestos Products Liability Litigation (No. VI), 771 F.Supp. 415 (Jud.Pan. Mult.Lit.1991), and transferred 26,639 asbestos personal injury cases to that Multi-District Litigation proceeding in the Eastern District of Pennsylvania. As of January 2006, an additional 80,074 asbestos personal injury cases had been transferred to that proceeding. 28 U.S.C. § 1407 empowers the transfer of cases to Multi-District Litigation proceedings. That statute provides that "transfers shall be made [upon the MDL Panel's] . . . determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Section 1407(a) states that the MDL Panel shall remand each transferred action "to the district from which it was transferred unless it shall have been previously terminated."
¶ 28 In 2002, the Rand Institute for Civil Justice issued a study on the current status of asbestos litigation in the United States. The Rand study stated that, as of 2002, approximately 73,000 of the 95,994 asbestos suits transferred to the Eastern District of Pennsylvania had been closed. But the study showed that of those 95,994 cases, the MDL panel remanded only 265 to their filing district for trial. Sales maintains that this shows that the Multi-District Litigation is a "procedural `black hole'" where cases "languish indefinitely." Reply Br. of Appellant. at 14 n. 2. He argues that due to the delays in the Multi-District Litigation proceeding, he will never have his day in court if Weyerhaeuser removes the case to the federal system.
¶ 29 Federal district courts from other jurisdictions have also voiced concerns about the efficiency and expediency of the Multi-District Litigation proceeding. See In re Maine Asbestos Cases, 44 F.Supp.2d 368, 374 n. 2 (D.Me.1999) (if these claims remain in federal court, they will encounter significant delay upon their transfer through the Multi-District Litigation proceedings where no asbestos trials or discovery takes place in deference to global settlement efforts); Madden v. Able Supply Co., 205 F.Supp.2d 695, 702 (S.D.Tex.2002) (there are thousands of asbestos cases pending in the Multi-District Litigation proceeding, and "if history be any indicator," keeping the claims in federal court will not increase efficiency and expediency). And Sales's counsel provided evidence that one of his clients, a mesothelioma victim, filed his case in August 2005, had his case transferred to the Multi-District Litigation in September 2005, and that as of July 2006, nothing further had happened in his case.
¶ 30 Weyerhaeuser offered testimony from G. Daniel Bruch, Jr., a Pennsylvania attorney who regularly defends asbestos claims. Bruch stated in his affidavit that when a plaintiff is in imminent danger of death, he has the opportunity to move his case promptly through the Multi-District Litigation system by submitting an affidavit detailing his *309 condition, providing information for settlement evaluation, and requesting a settlement conference. Bruch said that the purpose of these settlement conferences is to determine quickly whether the parties can settle the case or whether the MDL Panel should remand for trial. Bruch said that, in his experience, where the parties do not settle, the MDL Panel remands the case to the local federal court from which they originated.
¶ 31 In spite of Bruch's affidavit, Sales's evidence on the Multi-District Litigation, coupled with Weyerhaeuser's refusal to stipulate to Arkansas state court forum, compels us to conclude that Weyerhaeuser failed to establish that Arkansas was truly an adequate alternate forum.
¶ 32 The trial court could have solved this problem by requiring Weyerhaeuser to consent to trying the case in Arkansas state court as a condition of granting the dismissal. See Werner, 84 Wash.2d at 370-71, 526 P.2d 370. It abused its discretion in failing to do so. See Demelash, 105 Wash.App. at 530, 20 P.3d 447 (citing Fisons, 122 Wash.2d at 339, 858 P.2d 1054) (a court abuses its discretion if it bases its ruling on an erroneous view of the law).
¶ 33 We reverse and remand with instructions that the trial court condition dismissal on Weyerhaeuser's stipulation to proceed in the Arkansas state courts.
We concur: HUNT and PENOYAR, JJ.
NOTES
[1] As discussed below, evidence suggests that the magnitude of the multi-district litigation for asbestos personal injury actions prevents the expedient and efficient litigation of claims.